IN THE U. S. DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

RECEIVED

DEC 1 9 2012

TERE: ... ....... ...... .RK
U.S. ... ...
Southern District of .... Virginia

HAROLD L. CYRUS

v.                                    Civil Action No. 1:12-cv-9341

DAVID BALLARD

MEMORANDUM IN SUPPORT OF PETITION FOR POST-CONVICTION RELIEF

Petitioner contends that Phillip A. Scantlebury and David. C. Smith failed to provide meaningful and effective assistance of counsel during petitioner's trial and appeal as guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the U.S.A. (Ground A), and that petitioner was convicted on the indictment based upon insufficient evidence (Ground D). On January 30, 2002, K. R. S. (D.O.B. 01-12-90) was examined by Dr. Gregory H. Wallace, D.O., at the Robert C. Byrd Clinic, Lewisburg, W. Va. Dr. Wallace's finding included a finding that

> She was a Tanner 3 white female with an annular hymen that was intact and without evidence of bruising. Vaginal opening was very tightly constricted and I could barely get my finger tip in the vaginal opening to get my cultured tips inserted....My impression is that this child does not make a disclosure of sexual abuse. She is very convincing with that disclosure to me. I find no evidence of sexually transmitted disease nor physical exam to confer with that. My impression is that this child is not sexually abused.

Dr. Wallace did not testify at petitioner's trial. When the hymen is intact, there is reasonable doubt that criminal sexual conduct occurred. The jurors were not given a layman's definition of the term "Tanner 3 white female". Mr. Scantlebury and Mr. Smith did not develop the significance of this finding. The finding is potentially exculpatory.

The petit jury returned a guilty verdict on four charged offenses:

-1-

♦ Count 19 alleged petitioner committed the offense of "sexual abuse by a custodian: by unlawfully and feloniously engaging in sexual intercourse with K.R.S., a child under his care, custody and control, sometime during 2002, when K.R.S. was 12 years old.

♦ Counts 20 alleged petitioner engaged in sexual intercourse with his twelve year old step-daughter. In essence, the state maintained an adult male engaged in sexual intercourse with his step daughter

♦ Count 22 alleged petitioner committed the offense of "sexual abuse by a custodian: by unlawfully and feloniously engaging in sexual intercourse with K. S., a child under his care, custody and control, sometime between January and August 18, 2003, when K.R.S. was 13 years old.

♦ Counts 23 alleged petitioner engaged in sexual intercourse with his thirteen (13) year old step-daughter. In essence, the state maintained an adult male engaged in sexual intercourse with his step daughter sometime between January and August 18, 2003.

At the State Omnibus Habeas Corpus hearing, K. R. S., testified under oath that she "was supposedly molested by my step-father, Howard Lee Cyrus, beginning around age thirteen and a-half years old," (i.e., July 13, 2003).[1] K.R.S. was placed in Foster Care with Rolena Treadway in July 2003. Taken at face value, her 2008 testimony directly contradicts her trial testimony and the four convictions must be vacated. The state habeas court completely discounted her testimony that the sexual molestation commenced after

---

[1] *Cyrus v. Ballard*, Circuit Court of Mercer County, W. Va., Civil Case No. 08-C-322, Transcript, 11-24-08, p. 17 (hereinafter "T. Transcript")

she was place in foster care.

A commonly used method to identify the stages of puberty is the Tanner System, which classifies sexual maturation of adolescents into five stages. Dr. Tanner developed what is called the Tanner Scale which is used by every physician who deals with growth and development during adolescence. The Tanner Scale of Human Development for females is a  recognized scientific test utilized for determining the age of postpubescent Caucasian females and consists of separately rating, on scales of 1 to 5, breast development and pubic hair development, with Stage 1 being pre-adolescent and Stage 5 being adult. K. R. S. Is a white Caucasian female.   Under the Tanner system for measuring physical development, a female passes through five steps in progressing from a pre-pubertal child to a fully developed adult woman. The stages are marked by changes in breast and genital development.

A girl at stage 2 will almost certainly sustain physical damage or injury upon having sexual intercourse with an adult male. Such injuries would be classified as serious and would include tearing of tissue and damage to the vagina, the hymen and the introitus. *A girl who has reached stage 3 may or may not experience physical injury from the act of intercourse*, and most girls who have reached stage 4 can engage in sexual intercourse without tissue damage. Two out of every three adolescent girls reach Tanner Stage 4 before their fourteenth birthday and will not experience physical injury from the act of intercourse.[2] Although the indictment alleges "Sexual Abuse by a Custodian", the West

---

[2] Thirty-three percent of adolescent girls do not reach Tanner stage 4 until sometime after attaining the age of 14, in the present case after January 12, 2004. Twelve percent do not reach stage 4 until after attaining the age of 15. *U. S. v. Sacko*, 103 F. Supp.. 2d 85, 88 (D. VT. 2000).

Virginia Legislature places the crime in Chapter 61, Article 8D, Child Abuse. This law does not define the term "sexual abuse"[3] but does define the term "abuse" as "the infliction upon a minor of physical injury by other than accidental means." W. Va. Code § 61-8D-1(1)(1988, c. 42). While proof of the fact that the minor suffered no apparent physical injury is not designated an essential element of the crime of sexual abuse that is proscribed by W. Va. Code § 61-8D-5(a)(1998, c. 117), the absence of physical injury must be a relevant factor in determining whether the Court should impose concurrent or consecutive sentences. Petitioner believes fidelity to explicit definition of abuse requires concurrent sentences whenever the state's evidence does not support a finding of "infliction upon a minor of physical injury by other than accidental means".

The state legislature does define "sexual abuse" in another code section, i.e.,

 (j) Sexual abuse" means:

(A) As to a child who is less than sixteen years of age, any of the following acts which a ... custodian shall engage in, attempt to engage in..., with such child, notwithstanding the fact that the child may have willingly participated in such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct:

(i) Sexual intercourse.....[4]

Dr. Wallace also found that on January 30, 2002,  K. R.S.'s "annular hymen that was intact and without evidence of bruising." An intact hymen, especially for a 12 year old female, is strong evidence of the absence of sexual intercourse, and, therefore the

---

[3]"Sexual abuse" has been defined as "an illegal or wrongful sex act, esp. one performed against a minor by an adult." Black's Law Dictionary, 9th Edition, 2009, Thomson Reuter,  p. 11.

[4]W. Va. Code § 49-1-3 (15) (1936, 1st Ex. Sess., c. 1; 1941, c. 73; 1977, c. 65; 1978, c. 14; 1984, c. 27; 1990, c. 41; 1991, 2nd Ex. Sess., c. 13; 1992, c. 52; 1994, 1st Ex. Sess., cc. 17, 23; 1998, c. 81; 1999, c. 45.)

admission of evidence of alleged sexual contact, sexual intrusion or sexual intercourse prior to January 2002 was highly prejudicial.

At trial, Shirley Aycoth, of 307 Brierwood Drive, Bluefield, Virginia, testified that she was a nurse practitioner. When she examined K. R.S. at Bluefield Regional Hospital in 2003, she "didn't find any physical injuries or any physical findings." Nurse Aycoth made no determination whether K.R.S. had advanced from Stage 3 to Stage 4,[5] *State v. Cyrus*, 222 W. Va. 214; 664 S. E.2d 99, 102 (W. Va., 2008). However, on June 20, 2003, Dr. Zaki Elsarrag, M.D., an emergency room physician at Bluefield Regional Medical Center, reported the K.R.S. "is currently on her menstrual period" which would be indicative that she had advanced to Stage 4.[6]

Ms. Aycoth testified that K.R.S.'s hymen was not intact. On cross-examination, defense counsel failed to elicit an admission from Family Nurse Aycoth that a hymen can be in that condition from causes other than sexual intercourse. Petitioner does not know if the state possessed colposcopic slides (magnified photographs) of the victim's hymen during the 2003 examination. *State v. Williams*, 225 W. VA. 256 (2010). The exclusion of any reference by any witness to an incident in Bland County, Virginia, involving K. R.S. and Christopher Smith which culminated in the conviction of Mr. Smith in a Virginia court for contributing to the delinquency of minor (K.R.S.), Va. Code Ann. § 18.2-371, allowed the jury to falsely infer that petitioner's alleged conduct might be the sole cause for K. R. S.'s

---

[5] *State v. Cyrus*, Circuit Court of Mercer County, 05-F-307(F), Trial Transcript, April 12, 2006, 381-383

[6] Leikin, J. B., Editor,, Complete Medical Encyclopedia Random House Reference, American Medical Association, 2003, p. 1036 ("A white creamy vaginal discharge is emitted 6 to 12 months before the first menstrual cycle, which starts during stage 4.")

hymen not being intact.

In June 2003, K. R. S. had an encounter with Christopher Todd Smith (D.O.B. 12-22-84) of Rocky Gap, Virginia. K.R.S., a 13 years old female, and R. H, a 17 year old female, were transported from Bluefield, W. Va. to Rocky Gap, Va. by Mr. Smith and J. D. Payne, of Rocky Gap, Va.. Mr. Payne would later admit to having consensual sex with R. H. Mr. Scantlebury was Mr. Payne's attorney. The girls remained with the young men from Friday night, June 19 to Sunday morning, June 21. Mr. Smith was arrested for violating Va. Code § 18.2-371, Contributing to the Delinquency of a Minor, by Virginia authorities, to wit.

> while being eighteen years of age or older, (Mr. Smith) willfully contributed to, encourage, or cause any act or omission, or condition which rendered (K. R. S.), a child under the age of eighteen delinquent, in need of services, in need of supervision, abused, or neglected. Case No. A-520-01-00, Juvenile and Domestic Relations District Court, Bland County, Va.

Chief J. R. Bruce arrested C. T. Smith for contributing to the delinquency a minor. On December 11, 2003, Mr. Smith entered a plea of guilty to the charge, and the judge imposed a fine of $750.00 with a suspended jail sentence of three months, and probation for 12 months.[7]

On August 20, 2003, Zaki Elsarrag, M.D., an emergency room physician, at Bluefield Regional Medical Center, Bluefield, W. Va., was asked to examine K.R.S. by the child's grandmother. According to J. R. Bruce, K.R.S. and R.H. were examined by an ER Nurse who administered the PERK kit and a drug test. According to Dr. Elsarrag, the SANE nurse was unable to examine K.R.S. because the K.R.S.'s mother was not present to give

---

[7]On April 6, 2009, K. R. S. provided petitioner a notarized statement that she had sex with Chris Smith and the Deborah Garton told he keep silent about the Bland county deal.

consent. He did report that the K.R.S. "was here about one month ago, where she had presumably engaged in consensual sexual activity with adult men, and she was ... treated and released again."[8] Mr. Dudley, the Commonwealth's Attorney, and Chief J. R. Bruce were unable to obtain the results of a PERK kit at Bluefield Regional Hospital. Judge Frazier sealed the medical files of K. R. S. which described her physical condition following her interaction with Mr. Smith.

Contemporaneous medical studies have raised questions about the reliability of hymenal examinations as the basis for determining the occurrence of sexual abuse.[9] In 2002, the U.S. Court of Appeal for the Second Circuit observed,

> (M)edical expert consultation or testimony is particularly critical to an effective defense in sexual abuse cases where direct evidence is limited to the victim's testimony. ... In a case where the only direct evidence that any crime occurred or that, if it did, the petitioner committed it, was the testimony of the alleged victim, for defense counsel to simply concede the medical evidence without any investigation into whether it could be challenged was performance that the state court could not reasonably find to be objectively reasonable. Gersten v. Senkowski, 426 F.3d 588, 608 (2nd Cir., 2002).

Like the situation in Gersten, Prosecutor Garton's case was built centrally on the testimony of K.R.S. Ms. Aycoth, the nurse practitioner, did not testify that KRS's injuries were "consistent with penetration", but rather she testified that she "didn't find any physical injuries". And, as in Gersten, the defense attorneys conceded the medical evidence without

---

[8]Elsarrag,, Zaki, M.D., Bluefield Regional Medical Center, Bluefield, W. Va., Emergency Room Note, August 20, 2003.

[9] See, e.g., John McCann et al., "Genital Findings in Prepubertal Girls Selected for Nonabuse: A Descriptive Study", 86 Pediatrics 428 (1990) (finding that measurements of hymenal opening varied depending on hymenal type and child's position when measurements were conducted); Astrid Heger & S. Jean Emans, Introital Diameter as the Criterion for Sexual Abuse, 85 Pediatrics 222 (1990) (noting growing concern over emphasis placed on measurements of hymenal opening to diagnose sexual abuse and noting various factors that can impact on the results of such measurements).

consulting a medical expert or eliciting the testimony of a medical expert. Therefore, consistent established federal constitutional law, the decision of state courts that petitioner was afforded meaningful and effective assistance of counsel is not objectively reasonable.

There is no evidence that Phillip A. Scantlebury or David. C. Smith contacted an expert, either to testify or educate counsel on the vagaries of abuse indicia.[10] Such an expert could have brought to light a medical  studies that found  irregularities on the hymens of girls who were _not_ abused.[11] A medical expert witness was necessary to capitalize on any benefits from Dr. Wallace's 2002 examination of KRS and to effectively counter the testimony of Nurse Aycoth.  The state habeas court should have concluded that petitioner's defense with regard to the charges alleging sexual intercourse, as opposed to less intrusive acts of sexual contact, involving KRS was prejudiced by defense counsel's failure to retain and plan for a medical expert witness.[12]

The ruling of the state  courts that petitioner was afforded effective assistance of counsel is clearly contrary to, or involves in an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[10] Beth A. Townsend, "Defending the 'Indefensible': A Primer to Defending Allegations of Child Abuse", 45 A.F.L. Rev. 261, 270 (1998) ("It is difficult to imagine a child abuse case . . . where the defense would not be aided by the assistance of an expert.").

[11] John McCann et al., "Genital Findings in Prepubertal Girls Selected for Nonabuse: A Descriptive Study,", Pediatrics, 86(3): 428-439 (Sept. 1990); see also Townsend, 45 A.F.L. Rev. at 269-270 (discussing studies that indicate the presence of clefts on the hymen of non-abused girls); J. Gardner, "Descriptive Study of Genital Variation in Healthy, Nonabused Premenarchal Girls", 120 J. Pediatrics 258-260 (Feb. 1992).

[12] Miller v. Senkowski, 268 F. Supp.2d 296, 311-12 (E.D.N.Y. 2003); Eze v. Senkowski, 321 F.3d 110, 131-32 (2nd Cir., 2002); Pavel v. Hollins, 261 F.3d 210, 226; Holsomback v. White, 133 F.3d 1382, 1387-89 (11th Cir. 1998) (holding that failure to conduct adequate investigation into medical evidence of sexual abuse was ineffective); Knott v. Mabry, 671 F.2d 1208, 1212-13 (8th Cir. 1982) (noting that counsel may be found to be ineffective for failing to consult an expert where "there is substantial contradiction in a given area of expertise," or where counsel is not sufficiently "versed in a technical subject matter . . . to conduct effective cross-examination.");

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. 28 U.S.C. § 2254(d)(1) and (2); **_Williams v. Taylor_**, 529 U.S. 362, 413,120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

There is a reasonable probability that if Mr. Scantlebury or Mr. Smith had consulted a medical expert or secured the testimony of expert on child sexual abuse, the outcome of the trial would have been different. The testimony of a medical expert or Dr. Wallace is critical to an effective defense in a case  where the direct evidence is limited to the victim's testimony. The U.S. Supreme Court has defined  "a reasonable probability," as " a probability sufficient to undermine confidence in the outcome." **_Strickland_**, 466 U.S. at 694. This burden is relatively low, being less than a preponderance of the evidence. See **_Williams v. Taylor_**, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (noting that a state-court decision applying a preponderance-of-the-evidence standard to a question of attorney competence would be contrary to **_Strickland_**'s holding "that the prisoner need only demonstrate a 'reasonable probability'" of a different outcome).[13]

The jury convicted petitioner of one act of sexual intercourse with his stepdaughter in 2002 and one act of sexual intercourse with his stepdaughter in 2003.   However,   the indictment and the K.R.S.'s testimony provides no means by which a rational  juror could differentiate among various counts of the same offense and the indictment and K.R.S.'s testimony provided no means for the jury to match a specific act to a specific count in 2002. Accordingly, trial counsel failed to enable the  jurors to  find, with any degree of

---

[13]_Cornwell v. Bradshaw_, 559 F.3d 398, 405 (6th Cir. 2009) (explaining that a reasonable probability is "less than a preponderance of the evidence").

certainty, that each juror agreed upon a single, discrete, identifiable act to correspond to each count in the indictment beyond a reasonable doubt. Therefore, petitioner contends his attorneys failed to insure that petitioner was afforded a unanimous jury verdict, and any conviction after the first conviction must be reversed.

The jurors refused to convict petition of Sexual Assault in the Third Degree as alleged in Counts 18 and 21, i.e.,

> Count 18 - the Grand Jury further charges, during 2002, the exact date to the Grand Jury unknown, in the County of Mercer, State of West Virginia, State of West Virginia , HAROLD LEE CYRUS committed the offense of "Sexual Assault - Third Degree" by unlawfully and feloniously engaging in sexual intercourse with K. S., while the said K. S. was less than sixteen years of age and at least four years younger than the said HAROLD LEE CYRUS, who was sixteen years old or more and not married to K.S., against the peace and dignity of the State;

> Count 21 - the Grand Jury further charges, between the day ___,of January 2003 and the 18[th] day of August, 2003, the exact date to the Grand Jury unknown, in the County of Mercer, State of West Virginia, State of West Virginia , HAROLD LEE CYRUS committed the offense of "Sexual Assault - Third Degree" by unlawfully and feloniously engaging in sexual intercourse with K. S., while the said K. S. was less than sixteen years of age and at least four years younger than the said HAROLD LEE CYRUS, who was sixteen years old or more and not married to K.S., against the peace and dignity of the State.

As essential elements of three charged offenses, incest, sexual assault, 3rd degree, and sexual abuse by a custodian overlap, it is virtually impossible to be innocent of Sexual Assault in the Third Degree and simultaneously guilty of incest, predicated on an act of sexual intercourse, and sexual abuse by a custodian, predicated on an act of sexual intercourse in the same time period. The trial judge instructed the jury that the term "Sexual Assault in the Third Degree, as that term is used in the indictment, is committed when any

-10-

person being sixteen years old or more, engaged in sexual intercourse with another person who is less than sixteen years old and who is at least four years younger than the defendant, and is not married to the defendant.

In order to prove the commission of the offense of "Sexual Assault in the Third Degree," the State of West Virginia must overcome the presumption of innocence and prove, beyond a reasonable doubt, nine elements: 1) the defendant, H. L. Cyrus, 2), on a specific day in 2002, 3), in Mercer County, W. Va., 4) H. L. Cyrus was over sixteen years old; 5) engaged in sexual intercourse, 6) with K. S., 7) and K. S. was less than sixteen years old; and 8) K. S. was at least four years younger than H. L. Cyrus, and, 9) K. S. was not married to the defendant. The jury acquitted petitioner of these charges.

In West Virginia , in order for a perpetrator to commit the crime of sexual assault in the third degree, there must be some degree of penetration of the female genital organ by the male genital organ. _State v. Brady_, 104 W. Va. 523, 140 S. E. 546, 551 (1927). When the jury returned a not guilty verdict on Counts 18 and 21, they effectively determined that petitioner had not penetrated the labia of the pedenum of K. R. S. during 2002 or the first eight months of 2003.

Without some degree of penetration of the female sex organ by the male sex organ there can be no conviction for sexual assault in the third degree, incest, or Sexual abuse by a custodian. The jury found that the prosecuting attorney did not overcome the presumption of innocence and did not prove, beyond a reasonable doubt, all nine elements of the offense of sexual assault in the third degree. It necessarily follows that this petitioner is also innocent of incest and sexual abuse by a custodian predicated on an act of sexual

-11-

intercourse in 2002 or 2003.

In West Virginia, the principles of common law remain in force until altered or repealed by the state legislature. Constitution of West Virginia, Art. VIII, § 13.[14] Pursuant to common law principles, every crime requires the union of a prohibited act or *actus reus* and a guilty mind or *mens rea*. Strict liability offenses require no proof of a *mens rea*.[15] In this case, petitioner was accused of one strict liability crime, i.e., Sexual Assault in the Third Degree, W. Va. Code § 61-8B-5(a)(1) (2000, c. 85), predicated on an act of sexual intercourse.[16] The remaining crimes require proof of the prohibited act and a guilty mind. It necessarily follows that when the jury acquitted petitioner of the strict liability offense the jurors determined that the State had not proved beyond a reasonable doubt an essential element of every charged offense, i.e., sexual intercourse. A rational juror, presumably following the court's instructions, could not acquit a defendant of the strict liability offense because of insufficient evidence of an essential element of the offense and than convicted a defendant of all closely related offense.

On April 12, 2006, K.R.S. testified that her stepfather molested her since 1999.[17] But, she describe only one instance of sexual intercourse in 2003 with a reasonable amount of details to separate it from any other instance.

---

[14]West Virginia Code § 2-1-1.

[15]Garner, Bryan A., ed., Black's Law Dictionary, West Publishing, 9th Edition, p. 429.

[16]Garner, Bryan A., ed., Black's Law Dictionary, West Publishing, 9th Edition, pp. 1374-1375; Syl. pt. 5, State v. Sayre, 183 W. Va. 376, 395 S. E. 2d 799, 803 (W. Va., 1990).

[17]State v. Cyrus, Circuit Court of Mercer County, WV, No. 05-F-307, Trial Transcript, 04-12-06, pp. 257., 262, ("Herein after, "Tr. T.").

Q:     And then ... what happened, how did that progress?

KRS:  It just moved on up to him usin' his penis only instead of his fingers.[18]


Q:     Okay, so as far as you can remember he never ejaculated in you?

KRS:  No he didn't. (Tr. T., p. 230, lines 13-14)


Q:     Was it primarily the same type of behavior or ... did he do different things with you?

KRS:  The same, you know, just usin' his penis on me. (Tr. Tr., p. 231, lines 13-15)


Q:     Tell me what happened in the truck as best you can remember? (T. Tr., p. 239)

KRS:  He laid on top of me and just used his penis on me, and then whenever he ejaculated then he just pulled it out and, you know, put the condom in a bag where it wasn't seen. (T. Tr., p. 240, lines 1 - 3)

Q.:    When you say ... "used his penis on me" are you talking about sexual intercourse?

KRS:  Yes. (Tr. T., p. 240, lines 6-8)


Q:     Okay so then, as far as you can recall, it was 10 ½ or 11

KRS:  Yes (Tr. T., p. 259, lines 3-4)

Q:     And then you started having intercourse regularly with him?

KRS:  Yes (T. Tr., p. 259, lines 5-6)


Defense Counsel:    Okay so 2000 and 2001 we can figure out?

KRS:  I would agree that nothin' happened in 2000 and 2001? (T. Tr., p. 263, line 1)


      Please recall the when Dr. Wallace examined KRS in 2002, when she was 12 years old, her hymen was intact and there was no physical evidence of sexual abuse.[19] KRS's testimony creates the impression that she became her father's helper when she was 12 years old, 2002, and trial counsel did not correct this factual inaccuracy. KRS became her

---

[18] Tr. T., 04-12-06, p. 227, Lines 7-9

[19] Tr. T., p. 269, line 269.

father's helper in 2003, when she was thirteen. Taken as a whole, the testimony of KRS does not describe a specific incident of sexual intercourse, the charged offense, in 2002, similar to her description the truck episode in 2003.

In 2004, the Court of Appeals for the Sixth Circuit granted post-conviction relief to a petitioner who was convicted of 20 "carbon-copy" counts of child rape and 20 counts of felonious sexual penetration against his eight-year-old stepdaughter, and was sentenced to 40 consecutive life sentences. The district court granted Mr. Valentine habeas corpus relief on all of his convictions, holding that the indictment and convictions violated his due process rights to notice of the crimes charged with sufficient specificity so that he would not again be put in jeopardy of the same crimes. The court agreed with respect to 38 of the 40 counts, holding that the multiple, undifferentiated charges in the indictment violated the inmate's rights to notice and his right to be protected from double jeopardy, and therefore he was entitled to habeas corpus relief. Within each set of 20 counts, there were no distinctions made. The inmate was prosecuted for two criminal acts that occurred 20 times each, rather than 40 separate criminal acts. In its charges the prosecution did not attempt to lay out the factual bases for 40 separate incidents that took place; instead the stepdaughter described "typical" abusive behavior and testified that it occurred 20 or 15 times. *Valentine v. Konteh* 395 F. 3d 626 (6th, 2004).[20] As in *Valentine*, "the prosecution failed to lay out a factual base for at least one act of sexual intercourse in 2002 in Mercer

_____

[20]*Dilworth v. Markle*, 2010 U.S. DIST. LEXIS 12370 (2010); *U. S. v. Holmes*, 672 F. Supp. 2d 739 (2009);*Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005) (granting a defendant's habeas petition on the grounds that an indictment with twenty "carbon copy" counts for each of two offenses and the prosecutor's failure to distinguish the factual bases of the charges did not provide adequate notice of the basis for the charges)

County."[21]

CONCLUSION

Therefore, petitioner prays this Court will find that the decision of the Circuit Court of Mercer County, WV, that petitioner was afforded meaningful and effective assistance counsel, and the decision of the Supreme Court Appeals of West Virginia, affirming the decision of the lower court are clearly contrary to, or involves in an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 413,120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

Harold Lee Cyrus

Harold Lee Cyrus, Petitioner *pro se*
DOC # 43634 - Oak Hall - 125

---

[21] See, *Valentine*, 395 F.3d at 632 ("the criminal counts were not connected to distinguishable incidents., 395 F. 3d at 633.

-15-