**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **HAROLD L. CYRUS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:12–09341** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 23.), filed on November 7, 2014, by Shannon Frederick Kiser, Assistant Attorney General. Petitioner filed his Response on December 15, 2014. (Document No. 31.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment.

**PROCEDURAL HISTORY**

On May 9, 2005, the Grand Jury of Mercer County, West Virginia, returned a Twenty-Three (23) Count Indictment against Petitioner, charging him with six counts of "Sexual Assault in the First Degree" in violation of West Virginia Code § 61-8B-3 (Counts 1, 3, 6, 9, 12, 15); eight counts of "Sexual Abuse by a Custodian" in violation of West Virginia Code § 61-8D-5 (Counts 2, 4, 7, 10, 13, 16, 19, 22); seven counts of "Incest" in violation of West Virginia Code § 61-8-12 (Counts 5, 8, 11, 14, 17, 20, 23); and two counts of "Sexual Assault in the Third Degree" in violation of West Virginia Code § 61-8B-5 (Counts 18 and 21). State v. Cyrus, Criminal Action No. 05-F-307 (Cir. Ct. Mercer Co. July 24, 2006); (Document No. 23-1, Exhibit 1.) Following a two-day jury trial, Petitioner was convicted on April 12, 2006, of two counts of "Sexual Abuse by a Custodian"

(Counts 19 and 22) and two counts of "Incest" (Counts 20 and 23).[1] (Id., Exhibit 2.) Following Petitioner's conviction, trial counsel requested the Circuit Court to set aside the jury verdict and grant Petitioner a new trial. (Id., Exhibit 3.) By Order entered on July 24, 2006, the Circuit Court denied Petitioner's Motion and sentenced Petitioner to two terms of "not less than ten (10) nor more than twenty (20) years" for each offense of "Sexual Assault by a Custodian" and two terms of "not less than five (5) nor more than fifteen (15) years" for each offense of "Incest." (Id.) The Circuit Court ordered that Petitioner's "10-20 year sentence as to the offense of 'Sexual Abuse by a Custodian' as contained in Count 22 of the Indictment . . . be suspended" and that the remaining sentences were to run consecutively. (Id.) On December 8, 2006, the Circuit Court denied Petitioner's Motion for Reconsideration of Sentence and Motion for Reconsideration of Motion for New Trial. (Id., Exhibit 10, p. 7.)

On February 7, 2007, Petitioner, by counsel, Phillip Scantlebury and David Smith, filed his Petition for Appeal with the West Virginia Supreme Court of Appeals, raising the following assignments of error:

1. The Circuit Court abused its discretion in denying Petitioner's Motion for Reconsideration of Motion for New Trial based upon newly discovered evidence.

2. The Circuit Court erred in not requiring the State to comply with the disclosure requirements of Rule 16 of the West Virginia Rules of Criminal Procedure.

3. The Circuit Court erred in not holding Pretrial Hearings (after disclosure by the State, of which there was none) on other crimes, wrongs or acts for which the Petitioner was not indicted in violation of Rule 404 of the West Virginia

---

[1]  Upon the conclusion of the State's case, defense counsel presented an oral motion to dismiss. (Document No. 10-1, Exhibit 2, p. 1.) The Circuit Court granted defense counsel's motion as to eight Counts of the Indictment (Counts 1, 2, 6, 7, 8, 9, 10, and 11.) (Id.)

Rules of Evidence.

4.      There was cumulative error made by the Circuit Court.

(Id., Exhibit 10, p. 8.) The West Virginia Supreme Court granted the Petition for Appeal as to

grounds 2 and 3. (Id.) By Per Curiam Opinion filed on February 20, 2008, the West Virginia

Supreme Court affirmed Petitioner's conviction and sentence. (Id., Exhibit 6.); State v. Cyrus, 222

W.Va. 214, 664 S.E.2d 99 (2008).

On June 2, 2008, Petitioner, acting *pro se*, filed a Petition for Writ of *Habeas Corpus* in the

Circuit Court of Mercer County. (Document No. 23-1, Exhibit 10, pp. 9 - 10.) Petitioner raised the

following grounds for *habeas* relief:

1.      The Petitioner was clearly denied effective assistance of counsel during his
        trial and his appeal Petitioner's trial counsel was unprepared for trial. He
        failed to investigate leads, witnesses, and lab reports. This is contrary to an
        unreasonable application of clearly established United States precedent
        setting law, and violated the Petitioner's right under the First, Fifth, Sixth and
        Fourteenth Amendments to the United States Constitution and violates
        Article III, Section 10, and 14 of the West Virginia Constitution.

2.      Improper prosecutorial comments and actions were so damaging as to require
        reversal in that said comments and actions had a tendency to mislead the jury
        and prejudice the accused resulting in manifest injustice.

(Id.) Subsequently, the Circuit Court appointed Michael Cooke as *habeas* counsel. (Id.) On

September 2, 2008, Petitioner, by counsel, filed an Amended *habeas* Petition. (Id., Exhibit 10, pp.

10 - 11.) Petitioner raised the following grounds for *habeas* relief:

1.      Petitioner was denied a Preliminary Hearing; therefore, Petitioner's counsel
        was denied time to prepare a satisfactory defense and complete a thorough
        investigation of the facts surrounding the Petitioner's criminal charges, which
        indirectly lead to Petitioner's counsel rendering ineffective assistance to the
        Petitioner.

2.      The State of West Virginia suppressed evidence from the Petitioner that was
        helpful in the defense of the Indictment which resulted in the charges of the

3

underlying criminal matter.

3.     The State of West Virginia placed witness testimony into evidence that was knowingly inconsistent; therefore, the State of West Virginia allowed said witness to perjure herself.

4.     Trial counsel in the underlying criminal matter rendered ineffective assistance to the Petitioner.

5.     The Petitioner was convicted on the Indictment based upon insufficient evidence.

6.     As a result of newly discovered evidence, the Petitioner's underlying criminal matter warrants a new trial.

(Id., pp. 10 - 11.) Petitioner also filed a "Losh List" asserting the following errors: (1) "Suppression of helpful evidence by prosecuting attorney;" (2) "State's knowing use of perjured testimony;" (3) "Ineffective assistance of counsel;" (4) "No preliminary hearing;" (5) "Claims of prejudicial statements made by prosecuting attorney;" and (6) "Sufficiency of evidence." (Id., p. 13.) The Circuit Court conducted omnibus hearings on November 24, 2008. (Id., p. 14.) The Circuit Court heard testimony from the following: (1) K.R.S., the alleged victim; (2) David Smith, trial counsel; (3) Phillip Scantlebury, trial counsel; and (4) Petitioner. (Id., pp. 14 - 15.) After addressing the merits of above claims, the Circuit Court denied Petitioner's *habeas* Petition by Order entered on February 19, 2009. (Id., Exhibit 9.)

On September 28, 2009, Petitioner, by counsel, Michael Cooke, filed his Notice of Appeal concerning the Circuit Court's decision denying his *habeas* Petition. (Id., Exhibit 10, p. 15.) The West Virginia Supreme Court of Appeals refused Petitioner's appeal by Order entered on November 24, 2009. (Id.)

On January 22, 2010, Petitioner, acting *pro se*, filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Mercer County. (Id., p. 16.) Petitioner raised the following grounds

4

for *habeas* relief:

1.    Petitioner was denied effective assistance of habeas counsel:

    a.    Counsel did not develop the first habeas petition on ineffective trial counsel.

    b.    Counsel refused to call expert witness to develop the Petitioner's habeas issue.

    c.    Counsel did not investigate prosecutorial misconduct, nor develop the records.

    d.    Counsel failed to develop the jury misconduct when they requested a dictionary which had nothing to do with the criminal case, while they were deliberating on the case, and poll the jury upon their decisions, this denied petitioner his right to a fair and impartial jury.

    e.    Counsel failed to investigate the Assistant Prosecutor when she willingly and knowingly committed perjury to the jury.

    f.    Counsel failed to investigate the Indictment to go against the Grand Jury testimony causing the Petitioner a full and unfair jury trial.

2.    Newly Discovered Evidence:

    a.    Counsel failed to investigate leads and other witnesses that would exonerate the Petitioner.

(Id., pp. 16 - 17.) On March 2, 2010, Petitioner, acting *pro se*, filed his Amended *Habeas* Petition

raising the following grounds for relief:

1.    Petitioner received ineffective assistance of habeas counsel:

    a.    Habeas counsel did not develop the first habeas record on ineffective assistance of trial counsel.

    b.    Habeas counsel failed to properly investigate the lawfully returned and fraudulent indictment grand jury testimony, causing Petitioner to be denied his constitutional right to a fair and impartial trial.

    c.    Habeas counsel failed and refused to call expert witnesses and/or defense witnesses to develop the petitioner's habeas issues.

5

   d.    Habeas counsel failed to properly investigate trial counsel's failure to properly prepare, investigate, and/or read the grand jury transcript of petitioner.

   e.    Habeas counsel failed to investigate trial counsel as to why the assistant prosecutor, Deborah Garton, willingly and knowingly committed perjury to the jury.

   f.    Habeas counsel did not investigate prosecutorial misconduct, nor develop the records.

   g.    Habeas counsel failed to develop the jury misconduct issue when they requested a dictionary to be brought to the jury room, which had nothing to do with the case in hand, while they were deliberating on the case, and questioned the jury upon their decision as to why they needed a dictionary.

   h.    Habeas counsel failed to fully investigate, develop, and determine the testing that was conducted in the case.

   i.    Habeas counsel failed to investigate, and fully prepare, to present evidence to the court regarding the prosecutor's alleged violation of Rule 16, and failed to present any valid argument concerning the abuse of judicial discretion for allowing the mandates of Rule 16 to be so blatantly disregarded.

   j.    Habeas counsel failed to fully investigate and present the conflicting testimony of the State's chief witness concerning the alleged incident to the point where the State attempted to unduly influence the witness by saying that "he did it to you too."

   k.    Habeas counsel failed to fully investigate and determine why trial counsel failed to present the psychological evaluation marked as confidential which exonerated Petitioner as being guilty of any sexual abuse of a child.

2.  Newly discovered evidence:

   a.    Habeas counsel failed to investigate leads and other witnesses that would exonerate Petitioner.

   b.    Petitioner is in receipt of sworn affidavits from the alleged victim, which would exonerate him, and which states why there was . . . testimony given against Petitioner.

6

(<u>Id.</u>, pp. 17 - 20.)

On March 12, 2010, the Circuit Court appointed Paul Cassell, as *habeas* counsel. On August 2, 2010, Petitioner, by counsel, filed his Amended *Habeas* Petition raising the following grounds for relief:

1.  Prior habeas counsel was ineffective in addressing the provision of a dictionary to the jury.

2.  Prior habeas counsel was ineffective in appropriately addressing Petitioner's new evidence argument.

3.  Prior habeas counsel was ineffective in addressing trial counsel's ineffectiveness by turning State witnesses into expert witnesses with opinions that were detrimental to the Petitioner's case.

4.  Prior habeas counsel was ineffective in addressing trial counsel's failure to prevent reference to the underlying abuse and neglect case.

5.  Prior habeas counsel was ineffective in addressing that Petitioner was denied a hearing device during the trial even though he could not hear all the testimony.

6.  Prior habeas counsel was ineffective in addressing the wrongful amendment of the Indictment.

7.  Petitioner also asserts all additional grounds raised in his Losh Checklist.

(<u>Id.</u>, pp. 20 - 21.) On August 2, 2010, Petitioner filed his "Losh List" asserting the following errors: (1) "Prejudicial pretrial publicity;" (2) "Consecutive sentence for same transaction;" (3) "Suppression of helpful evidence by prosecutor;" (4) "Ineffective assistance of counsel" (5) "Defects in indictment;" (6) "Refusal to subpoena witnesses;" (7) "Constitutional errors in evidentiary rulings;" (8) "Claims of prejudicial statement by trial judges;" (9) "Claims of prejudicial statements by prosecutor;" (10) "Sufficiency of evidence;" and (11) "Ineffective assistance of habeas counsel." (<u>Id.</u>, pp. 23 - 24.) The Circuit Court conducted an omnibus hearing on January 6, 2011. (<u>Id.</u>, p. 24.)

7

The Circuit Court heard testimony from the following: (1) David Smith, trial counsel; (3) Reverend Avery Clinton Jackson; and (4) Danny Ray Goad, Sr. (Id., pp. 24 - 25.) After addressing the merits of above claims, the Circuit Court denied Petitioner's *habeas* Petition by a 109-page Order entered on June 3, 2011. (Id., Exhibit 10.)

On October 5, 2011, Petitioner, by counsel, Paul Cassell, filed his Petition for Appeal with the West Virginia Supreme Court of Appeals, raising the following assignments of error:

1. The [Circuit Court] erred in holding that prior habeas counsel was not ineffective in addressing the provision of a dictionary to the jury.

2. The [Circuit Court] erred in holding that prior habeas counsel was not ineffective in appropriately addressing petitioner's new evidence argument.

3. The [Circuit Court] erred in holding that prior habeas counsel was not ineffective in addressing trial counsel's ineffectiveness by turning state witnesses into expert witnesses with opinions that were detrimental to the petitioner's case.

4. The [Circuit Court] erred in holding that prior habeas counsel was not ineffective in addressing trial counsel's failure to prevent reference to the underlying abuse and neglect case.

5. The [Circuit Court] erred in holding that prior habeas counsel was not ineffective in addressing that petitioner was denied a hearing device during the trial even though he could not hear all the testimony.

6. The [Circuit Court] erred in holding that prior habeas counsel was not ineffective in addressing the wrongful amendment to the indictment.

(Document No. 23-2, Exhibit 11.) By Memorandum Decision filed on September 27, 2012, the West Virginia Supreme Court affirmed the decision of the Circuit Court. (Id., Exhibit 14.)

On December 19, 2012, Petitioner, an inmate at Mount Olive Correctional Complex ["MOCC"], and acting *pro se*, filed his Application to Proceed Without Prepayment of Fees or Costs, Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody,

and Memorandum in Support.[2] (Document Nos. 1 - 3.) Petitioner alleges the following grounds for

*habeas* relief:

1.  Petitioner was denied meaningful and effective assistance of counsel during his trial and appeal as guaranteed by the First, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the U.S.A.

    A.   Defense counsel failed to have Dr. Gregory H. Wallace testify before the jury.

    B.   Defense counsel failed to consult with an expert on child sexual abuse or provide expert testimony on child sexual abuse.

    C.   Defense counsel appealed on issues which they brought forth on their cross-examination of State witness.

    D.   Defense counsel appealed the admission of evidence into the Petitioner's trial, which they relied upon in their defense of Petition.

    E.   Defense counsel allowed Petitioner to be convicted of incest although there is no consanguineal relationship between Petitioner and his wife's daughter.

    F.   Defense counsel did not contest the imposition of consecutive sentences for incest and sexual abuse by a custodian despite the overlap in essential elements of the offense.

    G.   Defense counsel failed to safeguard Petitioner's right to an unanimous verdict because it was impossible to find, with any degree of certainty, that each juror agreed upon a single, discrete, identifiable act of sexual intercourse in 2002 to correspond to the allegations advanced in Courts 19 and 20 of the Indictment.

2.  Petitioner was denied his constitutional rights as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution when Deborah Garton, prosecuting attorney, suppressed exculpatory evidence which would have enabled Petitioner to present a complete defense.

---

[2] Because Petitioner acted *pro se* initially in this matter, the documents which he has filed in this case will be held to a less stringent standard than if they were prepared by a lawyer and therefore, they will be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

9

3.      Ms. Deborah Garton, prosecuting attorney, knowingly presented false testimony and she failed to correct testimony that she knew to be false.

4.      Petitioner was denied due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. when he convicted upon insufficient evidence.

5.      Petitioner was denied due process of law as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution, when the State Court failed to grant a new trial predicated on the recantation of the trial testimony by the State's sole witness.

(Document No. 2.) On July 2, 2013, Petitioner filed the following Exhibits in Support of his Petition:

(1) A copy of pertinent pages from the transcript of the omnibus hearing conducted on November

24, 2008 (Document No. 5, pp. 3, 4, 8,9.); (2) A copy of Petitioner's "visitor list" (Id., p. 5.); (3) A

copy of photographs of Petitioner and the alleged victim (Id., pp. 6 - 7.); (4) A copy of pertinent

pages from the alleged victim's psychologist report (Id., p. 10.); (5) A copy of a letter dated August

17, 2010, from the alleged victim addressed to the Governor of West Virginia (Id., pp. 11 - 14.); and

(6) A copy of a letter dated August 6, 2011, from the alleged victim addressed to the West Virginia

Supreme Court (Id., pp. 15 - 18.). On October 1, 2013, Petitioner filed the following Exhibit: A copy

of page 81 of the transcript of the omnibus hearing conducted on January 6, 2011. (Document No.

6.)

On October 6, 2014, Petitioner paid the $5.00 filing fee. (Document No. 15.) By Order

entered on October 7, 2014, the undersigned denied Petitioner's Motion to Proceed Without

Prepayment of Fees and Costs and directed Respondent to show cause, if any, why Petitioner's

Petition should not be granted. (Document No. 16.)

On October 10, 2014, in response to the Court's Order, Respondent filed his Answer, Motion

for Summary Judgment, and Memorandum in Support thereof with Exhibits. (Document Nos. 21,

23, 25 - 37.) As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's Indictment as filed in <u>State v. Cyrus</u>, Case No. 05-F-307 (Cir. Ct. Mercer Co.) (Document No. 23-1, Exhibit 1.); (2) A copy of the Conviction Order dated April 13, 2006 (<u>Id.</u>, Exhibit 2.); (3) A copy of the Sentencing Order dated July 24, 2006 (<u>Id.</u>, Exhibit 3.); (4) A copy of the Jury Instructions (<u>Id.</u>, Exhibit 4.); (5) A copy of the Jury Verdict Form (<u>Id.</u>, Exhibit 5.); (6) A copy of the West Virginia Supreme Court of Appeal's Order dated February 20, 2008, affirming Petitioner's conviction (<u>Id.</u>, Exhibit 6.); (7) A copy of the Circuit Court's Order dated April 24, 2008, denying Petitioner's Writ of Mandamus (<u>Id.</u>, Exhibit 7.); (8) A copy of the Circuit Court's Order dated April 28, 2008, denying Petitioner's Motion for Sentencing Reduction (<u>Id.</u>, Exhibit 8.); (9) A copy of the Circuit Court's Order dated February 19, 2009, denying Petitioner's first State *habeas* Petition (<u>Id.</u>, Exhibit 9.); (10) A copy of the Circuit Court's Order dated June 3, 2011, denying Petitioner's second State *habeas* Petition (<u>Id.</u>, Exhibit 10.); (11) A copy of Petitioner's Brief as filed with the West Virginia Supreme Court on October 5, 2011 (Document No. 23-2, Exhibit 11.); (12) A copy of the State's Response Brief filed with the West Virginia Supreme Court on November 18, 2011 (<u>Id.</u>, Exhibit 12.); (13) A copy of Petitioner's Reply Brief filed with the West Virginia Supreme Court on December 12, 2011 (<u>Id.</u>, Exhibit 13.); (14) A copy of the West Virginia Supreme Court's Memorandum Decision filed on September 27, 2012, affirming the decision of the Circuit Court (<u>Id.</u>, Exhibit 14.); (15) A copy of the West Virginia Supreme Court's Order dated May 27, 2014, denying Petitioner's Rule 35(b) Motion (<u>Id.</u>, Exhibit 15.); (16) A copy of K.R.S.'s Affidavit (<u>Id.</u>, Exhibit 16.); (17) A copy of the Pre-Trial Transcript (<u>Id.</u>, Exhibit 17.); (18) A copy of the Trial Transcript (Document Nos. 23-3 and 23-4, Exhibit 18.); (19) A copy of the Post-Trial Transcript (Document No. 23-5, Exhibit 19); and (20) A copy of the *Habeas* Omnibus Transcript (<u>Id.</u>, Exhibit 20.).

On November 14, 2014, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion for Summary Judgment. (Document No. 28.) On December 15, 2014, Petitioner filed his Response in Opposition. (Document No. 31.)

## FACTUAL BACKGROUND

Petitioner was charged with Sexual Assault in the First Degree, Sexual Abuse by a Custodian, Incest, and Sexual Assault in the Third Degree. The alleged victims were stepsisters V.C. and K.R.S. V.C. was the daughter of Petitioner. K.R.S. was the daughter of Vickie Cyrus. Vickie Cyrus and Petitioner were husband and wife. Petitioner allegedly sexually abused V.C. and K.R.S. on a regular basis. Although both victims allegedly informed Vickie Cyrus of the sexual abuse by Petitioner, Petitioner would deny the allegations and the victims were spanked for being dishonest. Subsequently, V.C. reported the abuse to a teacher and V.C. was removed from the home. Although K.R.S. was questioned by Child Protective Service workers, K.R.S. denied any abuse and was not removed from the home. K.R.S. testified that Petitioner continued to sexually abuse her until she told her maternal grandmother of the abuse in 2003. K.R.S. was subsequently removed from the home and placed in several different foster homes. During the abuse and neglect proceedings, K.R.S. recanted her allegations of abuse. During trial K.R.S. testified that she recanted because (1) she was pressured by her mother and Petitioner to recant, (2) she wanted to keep her family together, (3) Petitioner was the only father she had ever known, and (4) she did not want Petitioner to get into trouble.

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the

prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439

(4th Cir. 2003); also see 28 U.S.C. § 2254(e).[3] On this framework, consideration should be given to

Respondent's Motion for Summary Judgment.

## Motion for Summary Judgment:

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Once the moving party demonstrates the lack of evidence to support the non-moving party's claims,

the non-moving party must go beyond the pleadings and make a sufficient showing of facts

presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the

---

[3] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

## **ANALYSIS**

1.     **Ineffective Assistance of Counsel:**

The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. <u>Id.</u> Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. <u>Id.</u> at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. <u>Id.</u> at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. <u>Id.</u> The Court in <u>Strickland</u> cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and

15

sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993). Applying this standard, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

A.     *Failure to call Dr. Wallace as a Witness:*

In his Petition, Petitioner argues that trial counsel acted ineffectively in failing to call Dr. Gregory H. Wallace as a witness. (Document No. 2, pp. 4 - 5.) Petitioner contends that defense counsel had the report of Dr. Wallace, which documented that there was no evidence of sexual intercourse with K.R.S. and that K.R.S. denied any inappropriate sexual contact by Petitioner. (Id., p. 4.) Petitioner complains that although defense counsel sought permission to depose Dr. Wallace and have him testify before the jury, defense counsel ultimately agreed with the prosecutor "to stipulate to the facts and information contained within Dr. Wallace's report and allow its submission to the jury without the live testimony of Dr. Wallace to supplement its contents." (Id., p. 5.) Petitioner alleges that "the failure of defense counsel to have Dr. Wallace testify before the trial jury prevented the jury from obtaining the complete picture of this exculpatory evidence." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim "fails under both prongs of *Strickland's* analysis in that trial counsel's performance was not deficient, and Petitioner achieved a favorable result." (Document No. 25, p. 17.) Respondent contends that "trial counsel made a strategic choice to admit Dr. Gregory H. Wallace's report following a forensic examination of K.R.S., rather than call him personally as a witness, as he was typically 'very pro

Department and pro State when he comes into court . . . .'" (Id.) Respondent asserts that trial counsel "felt that Dr. Wallace could potentially recount a different version of events or cast the report in a different light that would be unfavorable to Petitioner." (Id.) Respondent notes that Dr. Wallace's report was favorable to Petitioner stating that it was his impression that K.R.S. was not sexually abused. (Id.) Respondent further states that Petitioner agreed to accept the State's stipulation of the report "[i]n lieu of any examination of [Dr. Wallace]." (Id.) Finally, Respondent states that the State *habeas* Court appropriately determined that "Dr. Wallace's report had the effect that trial counsel desired in that the Petitioner apparently was acquitted of all charges which were submitted to the jury on [K.R.S.] . . . which occurred before Dr. Wallace examined her." (Id.)

In Response, Petitioner complains that "[t]he jury was not afforded an explanation for Dr. Wallace's absence." (Document No. 31, p. 3.) Petitioner argues that the jury was "left to speculate that if he testified, his testimony would not be favorable to the defendant." (Id.) Petitioner contends that "[i]t is sheer speculation after the fact that there was a conscious or strategic decision not to call Dr. Wallace as a witness." (Id.)

The undersigned finds that Petitioner has failed to provide any evidence rebutting the State *habeas* Court's findings of fact and conclusions of law, which are presumptively correct. The State *habeas* Court properly applied the standards set forth in Strickland in its determination that counsel was not ineffective. Decisions concerning what defenses and evidence to present are questions of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under Strickland. The record reveals that trial counsels' decision not to call Dr. Wallace as a witness was a matter of trial strategy. The State *habeas* Court determined that "Dr. Wallace was almost always called by the State as a witness in these types of cases, and that his

testimony was usually damaging to the defense." (Document No. 23-1, Exhibit 9, p. 29.) Thus, the

State *habeas* Court concluded that "Petitioner's trial counsel made a tactical decision to agree to the

admission of the report, to limit the downside potential from a live examination of Dr. Wallace."

(Id.) In the report submitted to the jury, Dr. Wallace opined as follows: "My impression is that this

child does not make a disclosure of sexual abuse. She is very convincing with that disclosure to me.

I find no evidence of sexually transmitted disease nor physical exam to confer with that. My

impression is that this child is not sexually abused." The record further reveals that upon specific

inquiry by the trial court, Petitioner affirmed that he was agreeable to the admission of Dr. Wallace's

report as opposed to direct testimony by Dr. Wallace. (Document No. 23-2, Exhibit 17, pp. 6 - 9.)

Specifically, the trial court inquired as follows:

> THE COURT: It could possibly come in as a - - a record although I - - I'm - - I think the State would be doin' the right thing if they want to stipulate to it but it's their choice, they may - - may feel that he'd give some sort of a different - different version, or a different opinion, but the Court will take that motion under advisement and give the State twenty-four hours, I guess, to advise the Defendant's counsel if they will stipulate to that - - that's attached to your motion, right - -
>
> MR. SMITH: Yes sir.
>
> THE COURT: - - to that report of January of 2002 of Doctor Wallace?
>
> MR. SMITH: Yes sir.
>
> THE COURT: If they do, as I understand, you're - - you're advising the Court at this time that the Defendant will accept that?
>
> MR. SMITH: Yes sir.
>
> THE COURT: In lieu of any examination of him or calling him as a witness?
>
> MR. SMITH: Yes sir.

THE COURT:          Is that correct, Mr. Cyrus, do you agree with that? You have
                    to speak out.

THE DEFENDANT:  Yes.

THE COURT:          Okay. You understand you won't be able to complain about
                    that at a later time, if - - if they stipulate to that report and the
                    report goes in and you're convicted you're not gonna be able
                    to come back and say, well we should have called him as a
                    witness, he'd of been a stronger witness if he was here in
                    person, or something, you understand you won't be able to
                    complain about that, you understand that, you have to speak
                    out?

THE DEFENDANT:  Yes.

THE COURT:          An again, for the record, Doctor Wallace is - - is an individual
                    that I've found that would be normally very pro State, pro
                    Department when he comes into - - into court so you might be
                    better off with that than tryin' to call him as a witness - -

MR. SMITH:          Yes sir.

(Id., pp. 8 - 9.) Accordingly, trial counsel did not act unreasonably in failing to call Dr. Wallace as

a witness. Furthermore, there is no indication that Petitioner was prejudiced by trial counsels'

alleged failure to call Dr. Wallace as a witness. The record reveals that the Petitioner was acquitted

of all charges concerning K.R.S. that allegedly occurred before Dr. Wallace's examination of K.R.S.

Accordingly, Respondent should be granted summary judgment on the foregoing claim.

### B.    *Failure to Consult or Provide Expert Testimony on Child Sexual Abuse:*

In his Petition, Petitioner argues that trial counsel acted ineffectively in failing to "consult

with an expert on child sexual abuse or provide expert testimony on child sexual abuse." (Document

No. 2, pp. 4 - 5.) Petitioner states that "[m]edical expert consultation or testimony is particularly

critical to an effective defense in sexual abuse cases when the direct evidence is limited to primary

victim's testimony." (Id., p. 5.) Petitioner notes that the "only direct evidence of sexual abuse in this

19

case was the testimony of K.R.S." (Id.)

In his Motion for Summary Judgment, Respondent argues that "trial counsel was not deficient in deciding against expert testimony in the underlying criminal matter." (Document No. 25, p. 18.) Respondent notes that during the omnibus hearing, trial counsel testified that expert psychological reports and studies were scarce at the time of Petitioner's trial. (Id.) Respondent further argues that "there is simply nothing in the record which satisfies the second prong of Strickland analysis, as Petitioner cannot prove with any degree of certainty that his case was unfairly prejudiced." (Id.)

In Response, Petitioner cites the titles of law review articles concerning expert witness testimony in child sexual abuse cases. (Document No. 31, pp. 3 - 4.) Petitioner contends that trial counsel was ineffective because numerous law review articles existed prior to his trial. (Id., pp. 3 - 5.) Petitioner, therefore, concludes that "[d]efense counsel just failed to do the necessary research and make an informed choice." (Id., p. 5.) Petitioner requests that the Court "find that when an attorney has a client who has been indicted for twenty-three (23) sexual offenses over a seven (7) year period that allegedly affected two juveniles and their families, and who fails to consult an expert on child sexual abuse, fell below an objective standard of reasonableness." (Id.)

Without determining whether trial counsel's performance was deficient, the undersigned finds that Petitioner has not demonstrated that he was prejudiced by counsel's failure to call an expert witness. Although Petitioner cites the titles of numerous law review articles concerning expert testimony, Petitioner fails to explain how these law review articles support his claim that trial counsel should have called an expert witness. The undersigned notes that several of the titles to the law review articles indicate that expert witness testimony concerning sexually abused children is

20

unreliable. Furthermore, Petitioner does not allege that he is aware of a potential expert witness that would have given favorable testimony. Petitioner merely concludes that trial counsel was ineffective in failing to obtain expert testimony. Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley v. Halland, 649 F.Supp. 561, 566 (S.D.W.Va. 1986)(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones v. Gomez, 66 F.3d 199, 204 - 05 (9th Cir. 1995)(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). Based upon a review of the record, the undersigned finds no indication that Petitioner was prejudiced by trial counsel's failure to obtain an expert. Accordingly, the undersigned finds that Petitioner's above claim of ineffective assistance of counsel is without merit, and Respondent should be granted summary judgment.

## C.    *Grounds Asserted by Counsel on Appeal:*

In his Petition, Petitioner complains that "[d]efense counsel appealed on issues which they brought forth on their cross-examination of State witnesses." (Document No. 2, pp. 4 - 5.) Specifically, Petitioner alleges that trial counsel acted ineffectively in appealing expert testimony that trial counsel elicited during cross-examination of the State's lay witness. (Id.)

In his Motion for Summary Judgment, Respondent argues that "Petitioner's claim fails to satisfy either prong of *Strickland* analysis, and must be summarily dismissed as a matter of law." (Document No. 25, pp. 18 - 19.) Respondent first argues that trial counsel did not act deficiently. (Id.) Respondent contends that on appeal, "counsel was challenging the State calling witnesses that could be qualified as experts, but not using such witnesses as expert witnesses." (Id.) Respondent further contends that Petitioner was not unfairly prejudiced by the foregoing. (Id., p. 19.) Respondent

states that "Petitioner fails to supplement his Petition with anything more than empty allegations, and leaves his allegation of ineffective appellate counsel factually unsupported." (Id.)

In Response, Petitioner fails to state any facts or arguments in support of his foregoing claim. (Document No. 31, p. 6.) Petitioner merely requests that the Court allow him "an opportunity to supplement this claim for relief."[4] (Id.)

*Habeas* petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); also see Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971)(stating that "[t]he fundamental purpose of *habeas corpus* would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley, 649 F.Supp. at 566(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones, 66 F.3d at 204 - 05(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). The undersigned finds that

---

[4] The undersigned notes that Petitioner had more than adequate time to supplement his claim when filing his Response.

Petitioner above claim of ineffective assistance of appellate counsel is improperly pled. Petitioner merely concludes that appellate counsel was ineffective in his direct appeal. Petitioner complains that counsel asserted a ground on appeal, which the West Virginia Supreme Court concluded to be without merit. Specifically, the West Virginia Supreme Court disagreed with counsels' argument that the State introduced expert testimony by Ms. Beck and Ms. Leedy. The West Virginia Supreme Court concluded that the State limited the testimony of the foregoing witnesses to their factual knowledge, and any expert testimony was the result of cross-examination. Petitioner fails to set forth any analysis or explanation as to why counsel should not have asserted the foregoing ground on appeal, or how Petitioner was prejudiced. Therefore, the above claim of ineffective assistance of counsel should be dismissed.

### D.    *Improper Conviction for Incest:*

In his Petition, Petitioner complains that "[d]efense counsel allowed petitioner to be convicted of incest although there is no consanguineal relationship between petitioner and his wife's daughter." (Document No. 2, p. 4.) In his Motion for Summary Judgment, Respondent argues that "[t]rial counsel did not commit error in failing to challenge Petitioner's conviction under West Virginia's incest law, as step-children are contemplated by the statute." (Document No. 25, pp. 19 - 20.)

In Response, Petitioner first appears to argue that there was insufficient evidence that he was K.R.S.'s stepfather. (Document No. 31, p. 7.) Petitioner, however, acknowledges that K.R.S. testified that Petitioner was her stepfather and Roger Richardson was her biological father. (Id.) Next, Petitioner complains that his allegedly criminal conduct "occurred in 2002 and 2003, four or five years before the Supreme Court clarified the scope of the state incest law." (Id., p. 8.) Petitioner

23

argues that he should not have been convicted because "[w]hen the incest law was enacted, society's interest in prohibiting incest was the prevention of pregnancies which may involve a high risk of abnormal or defective offspring and does not necessarily extend to the type of sexual contact that does not lead to pregnancy." (Id.) Petitioner concludes that "counsel failed to ascertain the state of the law when the offense allegedly occurred, did not present this information to the jury, or identify it as a constitutional issue before the Supreme Court of Appeals." (Id., p. 10.)

Based upon a review of the record, the undersigned finds that trial counsel was not ineffective concerning Petitioner's incest convictions. West Virginia Code § 61-8-12 (1994) provides as follows:

> (a)    For the purposes of this section . . . (3) "Daughter" means a person's natural daughter, adoptive daughter or the daughter of a person's husband or wife; (4) "Father" means a person's natural father, adoptive father or the husband of a person's mother . . ..

* * *

> (b)    A person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her . . . daughter . . ..

A review of the trial transcripts reveals that V.C. and K.R.S. specifically testified that Petitioner was K.R.S.'s stepfather. (Document No. 23-3, Exhibit 18, pp. 147 and 205.) At the time of the offense, West Virginia Code § 61-8-12 clearly set forth that "daughter" means "the daughter of a person's . . . wife." Thus, trial counsel did not act unreasonably in failing to present arguments that K.R.S. was not the "daughter" of Petitioner pursuant to West Virginia Code § 61-8-12. To the extent Petitioner now argues that trial counsel should have presented arguments challenging the constitutionally of the statute, his argument is conclusory. Petitioner does not explain how the statute is unconstitutional. Additionally, there is no indication that the Petitioner would not have been

24

convicted of incest "but for" trial counsel's alleged errors. Therefore, Respondent is entitled to summary judgment regarding the above claim of ineffective assistance of counsel.

**E.    *Consecutive Sentences for Incest and Sexual Abuse by a Custodian:***

In his Petition, Petitioner complains that "[d]efense counsel did not contest the imposition of consecutive sentences for incest and sexual abuse by a custodian despite the overlap in essential elements of the offense." (Document No. 2, p. 4.) Petitioner states that trial counsel "failed to object to the imposition of consecutive sentences despite the obvious violation of the double jeopardy clause of the Fifth Amendment of the Constitution of the U.S.A." (Id., p. 6.) Petitioner also contends that appellate counsel "failed to raise as error the imposition of consecutive sentences arising out of the same transaction." (Id.)

In his Motion for Summary Judgment, Respondent argues that "[c]ounsel did not commit error in failing to challenge the Circuit Court's discretion in sentencing Petitioner to consecutive sentences." (Document No. 25, p. 20.) Respondent explains that Petitioner was conviction of two counts of "Sexual Abuse by a Custodian" under West Virginia Code § 61-8D-5 and two counts of "Incest" under West Virginia Code § 61-8-12. (Id.) Respondent states that "[b]oth statutes are separate offenses with separate punishment" and "[t]he Circuit Court had discretion in sentencing Petitioner to consecutive sentences stemming from each individual transaction." (Id.) Respondent, therefore, concludes that "trial counsel cannot be deemed to have acted deficiently for failing to object to clearly proper procedure by the Circuit Court." (Id.)

In Response, Petitioner first appears to argue that the constitutional guarantee against double jeopardy protects him from multiple punishment for the same conduct. (Document No. 31, pp. 11 - 13.) Petitioner contends that "this is a multiple punishment case." (Id., p. 11.) Specifically, Petitioner

argues that "his consecutive sentences for incest and sexual abuse by a custodian violates the federal double jeopardy clause because an incident culminating in one act of sexual intercourse with K.R.S. during 2002 (Counts 19 and 20) constitutes a single criminal act." (Id.) Petitioner, therefore, argues that trial counsel were ineffective in failing to assert the above argument. (Id., p. 12.)

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice in jeopardy of life or limb." Essentially, the Double Jeopardy Clause "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 65 (1969). When consecutive sentences are imposed upon the conclusion of a single criminal trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed 306 (1932), the Supreme Court devised the following test to determine whether two offenses are sufficiently distinguishable to allow the imposition of multiple punishments: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. "If each [offense] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. Untied States, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975).

In the instant case, Petitioner was convicted of two counts of "Sexual Abuse by a Custodian" under West Virginia Code § 61-8D-5 as to K.R.S. (2002 and 2003) and two counts of "Incest" under

West Virginia Code § 61-8-12 as to K.R.S. (2002 and 2003). West Virginia Code § 61-8D-5(a)

provides, in pertinent part, as follows:

> In additional to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody, or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years . . . .

W. Va. Code § 61-8D-5 (1998). West Virginia Code § 61-8-12 provides, in pertinent part, as follows:

> (b) A person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his . . . daughter . . ..

> (c) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction therefore, shall be imprisoned in the penitentiary not less than five years nor more than fifteen years . . ..

W. Va. Code 61-8-12 (1994). Clearly, the foregoing statutes require "proof of a fact that the other

does not." The offense of Sexual Abuse by a Custodian required proof that Petitioner was a

custodian of the alleged victim, Petitioner engaged in, or attempted to engage in, sexual intercourse

with the victim, and that the victim was under Petitioner's care, custody or control. The offense of

Incest required proof that the victim was Petitioner's daughter and that Petitioner engaged in sexual

intercourse with her. Accordingly, the above offenses of Incest and Sexual Abuse by a Custodian

required proof of different elements, not required by the other. See King v. Mirandy, 2013 WL

6882280, *20 (N.D.W.Va. Dec. 31, 2013)(finding that the offenses of Sexual Abuse by a Custodian,

Incest, and Third Degree Sexual Assault "required proof of different elements, not required by the

others."); also see State v. George W.H., 190 W.Va. 558, 439 S.E.2d 423 (1993)("defendant's

27

convictions under W. Va. Code § 61-8-12, for incest, and under W. Va. Code 61-8D-5(a), for sexual abuse by a custodian, do not violate the double jeopardy prohibition against multiple punishments for the same offense. The legislature made it exceptionally clear that W. Va. Code § 61-8D-5(a) is a separate offense from other Code sections.") The undersigned, therefore, finds that there was no double jeopardy violation and the trial court appropriately sentenced Petitioner to consecutive sentences for each offense. Thus, trial counsel and appellate counsel were not ineffective in failing to challenge Petitioner's consecutive sentences. Accordingly, the undersigned respectfully recommends that the District Court find that Respondent is entitled to summary judgment on the foregoing claim.

### F.    *Unanimity of the Jury Verdict:*

In his Petition, Petitioner complains that "[d]efense counsel failed to safeguard Petitioner's right to an unanimous verdict because it was impossible to find, with any degree of certainty, that each juror agreed upon a single, discrete, identifiable act of sexual intercourse in 2002 to correspond to the allegations advanced in Counts 19 and 20 of the Indictment." (Document No. 2, p. 4.) Petitioner explains that "[t]he jury convicted petitioner of one act of sexual intercourse with his stepdaughter in 2002 and one act of sexual intercourse with his stepdaughter in 2003." (Document No. 3, p. 9.) Petitioner states, however, that "the indictment and K.R.S.'s testimony provides no means by which a rational juror could differentiate among various counts of the same offense and the indictment and K.R.S.'s testimony provided no means for the jury to match a specific act to a specific count in 2002." (Id.)

In his Motion for Summary Judgment, Respondent argues that "[c]ounsel did not commit error in failing to challenge the unanimity of the jury verdict on the grounds that jurors would be

unable to unanimously agree on specific dates and times of Petitioner's sexual abuse of his step-daughter." (Document No. 25, pp. 20 - 21.) Respondent argues that Petitioner's above "allegation is based on nothing more than speculation that fails to have any factual or legal basis for relief." (Id., p. 21.) Respondent notes that "Petitioner fails to supplement his Petition with anything more than empty allegations, and leaves his allegation of ineffective trial counsel factually unsupported." (Id.) Respondent, therefore, contends that "Petitioner's claim fails to satisfy either prong of *Strickland* analysis, and must be summarily dismissed as a matter of law." (Id.)

In Response, Petitioner complains that "[t]he jury was not instructed to find that the offense was committed on a specific month or year, or that the offense occurred in Mercer County, W. Va." (Document No. 31, pp. 14 - 16.) Petitioner claims that "defense counsel did not object to the absence of these elements in the jury instructions." (Id.)

Without determining whether trial counsel's performance was deficient, the undersigned finds that Petitioner has not demonstrated that he was prejudiced by counsel's failure to challenge the unanimity of the jury verdict. The record reveals that trial counsel requested that the jury be polled following the reading of the verdict. (Document No. 23-4, Exhibit 18, p. 470.) The record reveals that all jurors individually affirmed their verdicts. (Id., pp. 470-72.) There is no indication that the jury's verdict was not unanimous. Thus, Petitioner's argument that trial counsel was ineffective in failing to challenge the unanimity of the jury verdict is without merit. To the extent Petitioner argues that the jury instructions were insufficient because the instructions did not contain the date and location of the charge, his argument is without merit. The purpose of the jury instructions is not to re-allege the charges contained in the Indictment. The purpose of jury instructions is to instruct the jury as to the law that applies in the case. As to Counts 19 and 20, the

undersigned notes that the Indictment clearly alleged the incidents occurred in 2002 in Mercer County, West Virginia. (Document No. 23-1, Exhibit 1.) Accordingly, the undersigned finds that Petitioner's above claim of ineffective assistance of counsel is without merit, and Respondent should be granted summary judgment.

**2.    Exculpatory Evidence:**

In his Petition, Petitioner argues that he was "denied his constitutional rights as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution when Deborah Garton, prosecuting attorney, suppressed exculpatory evidence which would have enabled Petitioner to present a complete defense." (Document No. 2, pp. 8 - 9.) Petitioner states that despite the prosecutor's knowledge of Rule 16, the prosecutor "failed to provide a copy of a report completed by Dr. Gregory H. Wallace to the defense counsel for the underlying criminal offense." (Id., p. 9.) Petitioner acknowledges that trial counsel had "a copy of the report completed by Dr. Wallace only because the Petitioner actually had a copy of said report in his possession." (Id.) Petitioner complains that the prosecutor "failed to comply with Rule 16 that required her to provide a copy of said report to counsel for the defendant." (Id.) Petitioner alleges that the foregoing hampered trial counsels' "preparation of a defense of the Petitioner." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim is without merit because "Petitioner suffered no harm as trial counsel was in possession of the complained-of forensic examination report, the State stipulated to the admission of the report, and Petitioner was acquitted of all charges that occurred prior in time to the reported examination." (Document No. 25, pp. 21 - 22.) Respondent explains that "Petitioner's allegation of the State's withholding of exculpatory evidence is based entirely on a report filed with the West Virginia

Department of Health & Human Resources on January 31, 2002, following Dr. Gregory Wallace's forensic examination of K.R.S., the minor victim." (Id., p. 22.) Respondent notes that the State *habeas* Court appropriately determined that Petitioner was in possession of the report several moths before trial. (Id.) Respondent notes that although the report was exculpatory in nature, the aforementioned report was already in Petitioner's possession. (Id.) Respondent further states that the report was stipulated to by the State and entered into evidence. (Id.) Respondent notes that Petitioner "was acquitted of all charges which allegedly occurred prior to the date of the examination and report." (Id.) Accordingly, Respondent argues that "any error committed by the State in failing to supply the aforementioned report to Petitioner's trial counsel during discovery cannot be held to be prejudicial to Petitioner, and Petitioner's claim does not rise to a level of constitutional deprivation of due process." (Id.)

In Response, Petitioner acknowledges that he was only convicted of "Count 19 (Sexual Abuse - 2002), Count 20 (Incest - 2002), Count 22 (Sexual Abuse, Jan. - Aug. 2003), and Count 23 (Incest, Jan. - Aug, 2003)." (Document No. 31, p. 23.) Petitioner, however, complains that Counts 3, 4, 5, 12, 13, 14, 15, 16, and 17 "should have been withdrawn prior to the trial and not considered by the jury as the conduct allegedly occurred nine years before the trial began." (Id., 23 - 27.) Petitioner explains that "given Dr. Wallace's report and the stipulation to the report by the State," the jury should not have considered the evidence concerning the foregoing counts. (Id.)

It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). In United States v. Agurs, 427 U.S. 97,

111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976), the Supreme Court clarified the prosecutor's duty to require disclosure of favorable evidence to the defense, even if not requested. This duty encompasses impeachment evidence, exculpatory evidence, and evidence "known only to police investigators and not to the prosecutor." Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555, 1567-68, 131 L.Ed.2d 490 (1995). However, a prosecutor does not have a "constitutional duty routinely to deliver his entire file to defense counsel." United States v. Agurs, 427 U.S. at 111, 96 S.Ct. at 2401. If the prosecution suppresses Brady material, the disclosure of which would have in all reasonable probability resulted in a different outcome, then the mandates of due process are violated. See United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97. To state a valid Brady claim therefore, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching, [the] evidence must have been suppressed by the State, either willfully or inadvertently," and the evidence must have been material to the verdict such that its suppression prejudiced the defense. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); Monroe v. Angelone, 323 F.3d 286, 299-300 (4th Cir. 2003). However, "when the claim is one of delayed disclosure rather than complete suppression . . . [the Court] need not reach the question whether the evidence at issue was 'material' under Brady unless the defendant first can show that defense counsel was 'prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case.'" United States v. Lemmerer, 277 F.3d 579, 588 (1st Cir.), cert. denied, 537 U.S. 901, 123 S.Ct. 217, 154 L.Ed.2d 173 (2002)(quoting United States v. Ingraldi, 793 F.2d 408, 411-12 (1st Cir. 1986)).

> The "principal concern" in such cases is "whether the failure to supply the information in a seasonable fashion caused the defense to change its trial strategy." *United States v. Joselyn*, 99 F.3d 1182, 1196 (1st Cir. 1996). Thus, the defendant

must show that "learning the information altered the subsequent defense strategy and [that], given timeous disclosure, a more effective strategy would likely have resulted." *United States v. Devin*, 918 F.2d 290 (1st Cir. 1990). He cannot rely on wholly conclusory assertions but must bear the burden of producing, at the very least, a prima facie showing of a plausible strategic option which the delay foreclosed." *Id.*

Lemmerer, 277 F.3d at 588.

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. (Document No. 23-1, Exhibit 9, pp. 22 - 25.) The State *habeas* Court determined that "the effect of this error on the Petitioner was harmless and that the Petitioner was not prejudiced by the State's failure to disclose this evidence." (Id., p. 25.) The State *habeas* Court explained that "Petitioner's trial counsel had this report for several months before the trial and were not surprised by it." (Id.) Finally, the State *habeas* Court found that "the report was very effectively used and greatly assisted trial counsel in their defense of the Petitioner at trial" because Petitioner was "found not guilty of all counts which were submitted to the jury which allegedly occurred before Dr. Wallace's examination of K.R.S." (Id., pp. 23 and 25.)  Although Petitioner argues that the prosecutor erred by failing to produce Dr. Wallace's report, Petitioner does not dispute that he had a copy of the report months prior to trial and that he was acquitted on all charges allegedly occurring prior to Dr. Wallace's examination. Based upon the foregoing, the undersigned finds no indication in the record that Petitioner was "prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." The undersigned, therefore, finds that Petitioner's above claim is without merit, and Respondent should be granted summary judgment.

**3.      Prosecutorial Misconduct:**

In his Petition, Petitioner argues that "Deborah Garton, prosecuting attorney, knowingly presented false testimony and she failed to correct testimony that she knew to be false." (Document No. 2, pp. 10 - 11.) Petitioner explains that the prosecutor "placed evidence before the jury with total awareness that K.R.S. had previously testified that the accused did not abuse her in a prior abuse and neglect proceeding." (Id.) Petitioner, therefore, argues that the prosecutor "induced the witness, K.R.S., to commit perjury." (Id.) Petitioner states that the prosecutor "allowed a state witness to perjure herself when she allowed K.R.S., the alleged victim, to testify under oath that Petitioner had sexually abused her." (Id.) Petitioner claims that "[t]he prosecutor made no effort to correct the witness's false statements." (Id.) Petitioner notes that during trial, "K.R.S. testified that Petitioner had sexually assaulted her on several occasions." (Id., p. 11.) Petitioner states that "[i]n a contemporaneous legal proceeding, the Abuse and Neglect Proceeding, K.R.S. testified that Petitioner did not sexually assault her." (Id.) Petitioner argues that the "the jury was misled by Ms. Garton because the jury was placed in a position where it had to decide whether K.R.S. was being truthful under oath during the criminal prosecution of Petitioner or if K.R.S. had been truthful when testifying under oath in the abuse and neglect proceedings." (Id.) Petitioner contends that the jury could have only been confused by K.R.S.'s inconsistent and contradictory testimony. (Id.)

In his Motion for Summary Judgment, Respondent argues that "Deborah Garton, as prosecuting attorney in Petitioner's underlying criminal matter, did not knowingly elicit false testimony." (Document No. 25, pp. 22 - 24.) Respondent asserts that Petitioner "relies solely on the minor victim's inconsistent testimony regarding the sexual abuse she suffered from Petitioner." (Id., p. 23.) Respondent notes that the "minor victim made numerous statements before, during, and after

Petitioner's underlying criminal trial both inculpating and exculpating Petitioner." (Id.) Respondent asserts that Petitioner "asks this Court to look beyond the minor victim's allegations of abuse and focus entirely upon her recantation." (Id.) Respondent argues that "it is simply unreasonable for this Court to share Petitioner's view that Deborah Garton, as prosecuting attorney, purposefully forced the minor victim to perjury herself in testifying against Petitioner in the underlying criminal matter." (Id., p. 24.)

In Response, Petitioner continues to argue that during abuse and neglect proceedings, K.R.S. denied that Petitioner sexually assaulted her. (Document No. 31, pp. 27 - 28.) Petitioner argues that "Deborah Garton placed evidence before the jury with total awareness that K.R.S. had previously testified that the accused had not sexually abused her in the earlier prior abuse and neglect proceeding." (Id., p. 28.) Petitioner claims that the prosecutor "allowed a state witness to perjure herself when she allowed K.R.S., the alleged victim, to testify under oath (4/11/06), that petitioner had sexually abused her after she had testified under oath that petitioner had not abused her (12/09/03)." (Id.) Petitioner asserts that "Ms. Garton made no effort to correct the witness's false statements." (Id.)

The State *habeas* Court concluded that Petitioner's above claim was without merit. (Document No. 23-1, Exhibit 9, pp. 25 - 27.) Although the State *habeas* Court determined that "K.R.S. made numerous statements before trial which both inculpated and exculpated the Petitioner," the Court found that "this often happens in criminal actions of this type." (Id., p. 26.) The State *habeas* Court determined that "recantations by witnesses present questions of fact to be determined by the trier of fact" and that the "trial court adequately instructed the jury on the issue of determining the credibility of witnesses." (K.R.S., pp. 26 - 27.) The State *habeas* Court, therefore,

concluded that "the Assistant Prosecutor did not breach her obligation to serve as a quasi-judicial officer in that, except for Dr. Wallace's report, she provided the Petitioner's trial counsel with access to all material which could be used in impeachment of K.R.S." (Id., p. 26.) The undersigned has thoroughly reviewed the record and finds no evidence that the State *habeas* Court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts. The record reveals that the prosecutor questioned K.R.S. during direct examination concerning her testimony during abuse and neglect proceeding where she denied that Petitioner had sexually abused her. (Document No. 23-3, Exhibit 18, pp.; 226-27, 243-44.) During cross-examination, trial counsel thoroughly questioned K.R.S. concerning her verbal statements and written statement denying any sexual abuse by Petitioner. (Document Nos. 23-3 and 23-4, Exhibit 18, pp. 263-84.) On re-direct, the prosecutor again questioned K.R.S. concerning her inconsistent written statements and testimony during the abuse and neglect proceedings. (Document No. 23-4, Exhibit 18, pp. 288-91.) The trial transcripts reveal that K.R.S. acknowledged that she had made false written statements and lied during the abuse and neglect proceedings when she denied being sexually abuse by Petitioner. (Id.) K.R.S. explained that she recanted her allegations of sexual abuse because (1) she wanted to keep her family together, (2) she did not want Petitioner to get in trouble, and (3) her mother and Petitioner were instructing her as to what to say in the written statements. (Id., pp. 289-91.) Although the record contains evidence that K.R.S. made inconsistent statements concerning abuse by Petitioner, the undersigned finds that there is no evidence that prosecutor presented false or perjured testimony. A prosecutor's use of testimony that she knows, or should have known, to be false or perjured to obtain a conviction violates due process. See United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); United State v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed. 342 (1976). The mere existence of discrepancies or inconsistencies

in testimony, however, does not establish that the prosecutor knowingly used false or perjured testimony. See United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987)(finding that "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony"). In the instant case, Petitioner merely indicates that K.R.S. gave inconsistent statements concerning the alleged sexual abuse. The undersigned notes that any inconsistencies in witness testimony goes to the credibility of that witness. Thus, Petitioner's conclusory allegation that the prosecutor engaged in misconduct by offering false testimony is without merit and should be dismissed.

**4.    <u>Insufficient Evidence</u>:**

In his Petition, Petitioner argues that he was "denied due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. when he was convicted upon insufficient evidence." (Document No. 2, pp. 12 - 14.) Petitioner argues that "[t]he evidence in the underlying criminal proceeding was insufficient because it failed to show that the Petitioner sexually abused or assaulted K.R.S. beyond a reasonable doubt." (Id.) First, Petitioner notes that even though K.R.S. testified that Petitioner had sexually abused her, K.R.S. acknowledged that she had wrote false statements to the Court and testified falsely during abuse and neglect proceedings. (Id., p. 13.) Petitioner further argues that the State failed to present any physical evidence that corroborate K.R.S.'s allegations that she was sexually abused. (Id.) Petitioner further notes that Nurse Practitioner Shirley Aycoth testified that she saw no evidence of sexual abuse during her physical exam of K.R.S. even though K.R.S. had informed Ms. Aycoth that she had been sexually abused by Petitioner. (Id.) Petitioner notes that trial counsel presented Dr. Wallace's report, which stated that it was his impression that K.R.S. had not been sexually abused. (Id.) Finally, Petitioner notes that

37

trial counsel presented seven defense witnesses who testified "to petitioner's character and his conduct around K.R.S." (Id.) Petitioner states that he testified in his defense stating that he had not sexually abused K.R.S. and that he loved his children. (Id.) Accordingly, Petitioner argues that there was insufficient evidence to sustain his conviction. (Id., p. 14.)

In his Motion for Summary Judgment, Respondent argues that "sufficient evidence existed on which to base Petitioner's criminal convictions." (Document No. 25, pp. 24 - 26.) First, Respondent notes that K.R.S. implicated Petitioner in several instances of sexual abuse despite rigorous cross-examination. (Id., p. 25.) Respondent next asserts that even though Dr. Wallace's report noted that K.R.S.'s hymen was intact at the time of his exam, the State produced evidence that K.R.S.'s hymen was no longer intact following the acts of abuse that Petitioner was convicted upon by the jury. (Id.) Respondent argues that V.C. testified that "Petitioner committed sexual abuse to both her and K.R.S." (Id.) Counselor Shannon Beck and Child Protective Services Worker Krystal Leedy corroborated that K.R.S. stated she had been sexually abused by Petitioner. (Id.) Finally, Respondent argues that the trial court properly instructed the jury as to the weight of the evidence in the underlying criminal matter. (Id.) Respondent, therefore, concludes that a rational trier of fact had more than sufficient evidence on which to convict Petitioner for the sexual abuse of his step-daughter, K.R.S. (Id., p. 26.)

In Response, Petitioner first argues the Indictment is invalid as to Counts 12 and 15.[5] ((Document No. 31, p. 29.) Second, Petitioner argues that there was insufficient evidence to convict him of incest because there was no testimony concerning "a mother-daughter relationship between

---

[5] The undersigned notes that Petitioner was not convicted of Counts 12 and 15. (Document No. 23-1, Exhibit 2.)

K.R.S. and petitioner's wife."[6] (Id., p. 30.) Third, Petitioner contends that he was improperly convicted and sentenced for two offenses based upon "one act of sexual intercourse with K.R.S. sometime during the first eight months of 2003."[7] (Id., p. 31.)

The United States Supreme Court held that "evidence is sufficient to support a conviction whenever, 'after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Matthews, ___ U.S. ___, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012)(quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this "deferential federal standard," a federal habeas court should not "unduly impinge . . . on the jury's role as factfinder." Coleman v. Johnson, ____ U.S. ____, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012). The Supreme Court explained that "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts." Id.(quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781)(stating that the "deferential standard" does not permit "fine-grained factual parsing.")

The record reveals that Petitioner was convicted of two counts of Sexual Abuse by a Custodian and two counts of Incest for acts occurring in 2002 and 2003. According to statute, a person is guilty of Sexual Abuse by a Custodian if a custodian of a child engages in, or attempts to engage in, sexual exploitation, sexual intercourse, sexual intrusion, or sexual contact with a child under his care, custody, or control. W. Va. Code § 61-8D-5(a) (1998). A "custodian" is defined as

_____

[6] For the reasons stated above in Section 1(D), the undersigned finds the foregoing claim to be without merit.

[7] For the reasons stated above in Section 1(E), the undersigned finds the foregoing claim to be without merit.

"a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding." W. Va. Code § 61-8D-1(4) (1988). Additionally, a "custodian" includes, but is not limited to, "the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession nor care and custody of a child with the parent, guardian or custodian." (Id.) According to statute, a person is guilty of Incest if a person engages in sexual intercourse or sexual intrusion with his daughter. W. Va. Code § 61-8-12(b) (1994). For purposes of the foregoing, "daughter" is defined as "a person's natural daughter, adoptive daughter, or the daughter of a person's . . . wife." W. Va. Code § 61-8-12(a)(3).

A review of the trial transcripts reveals that sufficient evidence existed for the jury to conclude that K.R.S. was the daughter of a Petitioner's wife and that Petitioner had care, custody, and control of K.R.S. (Document No. 23-3, Exhibit 18, p. 147-48, 151, 165, 205.) Taken in the light most favorable to the prosecution, the trial transcripts further reveals that any rational trier of fact could have found that Petitioner engaged in sexual intercourse with K.R.S. in 2002 and 2003. Despite vigorous cross examination, K.R.S. testified that Petitioner sexual abused her in 2002 and 2003. (Document Nos. 23-3 and 23-4, Exhibit 18, pp. 227-94.) K.R.S. explained that Petitioner engaged in sexual intercourse with her at least once a week and that the acts occurred in every room of the house and his truck. (Document No. 23-3, Exhibit 18, pp. 227-40, 258-60.) Although K.R.S. acknowledged that she gave inconsistent testimony during abuse and neglect proceedings, and wrote letters to the Circuit Court Judge stating that Petitioner had not sexually abused her, K.R.S.

explained at trial that she recanted her statement of abuse because she wanted to keep her family together. (Document Nos. 23-3 and 23-4, pp. 248-56, 263-91.) K.R.S. further testified that her mother and Petitioner had instructed her on what to write in the letters that recanted her statement of sexual abuse by Petitioner. (Id., pp. 263-91.) Counselor Shannon Beck and Child Protective Services Worker Krystal Leedy testified that K.R.S. informed them that she had been sexually abused by Petitioner and K.R.S. only recanted because she wanted to keep her family together. (Document No. 23-4, Exhibit 18, pp. 300-05 and 335.) The record further reveals that Dr. Wallace's report was entered into evidence wherein Dr. Wallace opined that K.R.S. had not been sexually abused. Dr. Wallace's report indicated that K.R.S.'s hymen was intact during his examination on January 30, 2002.  Nurse Practitioner Shirley Aycoth, however, testified that she examined K.R.S. in August, 2003 and K.R.S.'s hymen was not intact. (Document No. 23-4, Exhibit 18, pp. 382-84.) Reviewing the evidence in the light most favorable to the prosecution, the undersigned finds sufficient evidence existed for "*any* rational trier of fact" to find the Petitioner engaged in sexual intercourse with K.R.S. in 2002 and 2003. Thus, sufficient evidence existed for any rational trier to fact to determine beyond a reasonable doubt that Petitioner was guilty of committing Sexual Abuse by a Custodian and Incest in 2002 and 2003. The undersigned, therefore, respectfully recommends that Respondent should be granted summary judgment on the above ground.

**5.**     <u>**Actual Innocence based upon Recantation of Testimony:**</u>

In his Petition, Petitioner argues that he was "denied due process of law as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution when the State Court failed to grant a new trial predicated on the recantation of the testimony by the State's sole witness." (Document No. 2, pp. 15 - 16.) Citing <u>State v. Crouch</u>, 191 W.Va. 272 (1994), Petitioner argues that he satisfied the

five factors for granting a new trial in West Virginia. (Id., p. 15.) Petitioner argues that a new trial is warranted "as a result of newly discovered evidence." (Id.) Petitioner explains that "[t]his newly discovered evidence relates to another recantation by the alleged victim K.R.S." (Id.) Petitioner states that "K.R.S. wrote her letters recanting her trial testimony on or after October 6, 2006, . . . after the Petitioner was convicted and sentenced." (Id.) Petitioner claims that "in her letters, K.R.S. recants her allegations, this information is new and material and would produce an acquittal in any new trial on the merit." (Id.) Petitioner states that K.R.S. "[r]ecants her statements of all of the acts which resulted in the Petitioner's incarceration." (Id., p. 16.) Petitioner, therefore, concludes that he is entitled to a new trial. (Id.)

In his Motion for Summary Judgment, Respondent argues that "Petitioner is not entitled to federal habeas relief based purely upon the recantation of earlier testimony." (Document No. 25, pp. 26 - 28.) First, Respondent contends that "evidence which Petitioner asserts is 'new evidence' was in fact the same credibility evidence weighed by the jury during Petitioner's trial, that of K.R.S.'s recantation of her allegation of Petitioner's abuse." (Id., p. 27.) Respondent notes that the jury found Petitioner guilty after hearing the prior recantation evidence and "Petitioner's assertion that a later recantation is new evidence is technically unsound." (Id.) Second, Respondent argues that such recantation must be viewed with scrutiny. (Id.) Respondent notes that K.R.S. testified during trial that her family pressured her into recanting and bullied her into writing a recantation letter. (Id.) Respondent asserts that "there is simply too large a presumption of tampering by Petitioner and his family to unabashedly recognize as true K.R.S's later recantations." (Id., p. 28.) Therefore, Respondent concludes that "taking into consideration the 'presumption of correctness' afforded the Circuit Court in Petitioner's prior habeas proceedings, the presumption of correctness of the trier

of fact, and the suspicion afforded Petitioner's 'new evidence' - - a suspicion rightfully imposed by the Supreme Court - - Petitioner's Ground Five simply offers no avenue of relief under federal habeas proceedings." (Id.)

In Response, Petitioner argues that K.R.S. has stated on several occasions that Petitioner did not sexually abuse her: (1) "K.R.S. recanted in November, 2003;" (2) On November 24, 2008, K.R.S. testified at Petitioner's omnibus hearing that the "incident that led to [Petitioner's] incarceration did not happen;" (3) On August 17, 2010, K.R.S. wrote a letter to Governor Manchin stating that Petitioner had not sexually abused her; and (4) In 2011, K.R.S. was available and willing to testify at Petitioner's second omnibus hearing that Petitioner did not sexually abuse her. (Document No. 31, pp. 33 - 34.) Petitioner, therefore, argues that K.R.S.'s multiple recantations are unequivocal and reliable. (Id., p. 34.) Petitioner concludes that "[i]t is obvious that any information pertaining to the victim, K.R.S., recanting her original allegations should produce an opposite result at a new trial on the merits." (Id., p. 36.)

The undersigned finds that Petitioner's free standing claim of actual innocence based upon K.R.S.'s recent recantation to be without merit.[8] "Actual innocence based on newly discovered evidence is not an independent ground for federal habeas relief." Christian v. Ballard, 2013 WL 4046348, * 13 (S.D.W.Va. August 8, 2013)(J. Chambers)(citing Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); Jones v. Seifert, 808 F.Supp.2d 900 (S.D.W.Va. Sept. 8, 2011)("Although the Supreme Court has never expressly foreclosed a free-standing claim of actual innocence, it has also "yet to come across any prisoner who could make the extraordinarily

---

[8] The undersigned further notes that "[p]ost-trial recantations of testimony are 'looked upon with the utmost suspicion.'" See United States v. Lightly, 616 F.3d 321, 375 (4th Cir. 2010)(quoting United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir. 1973).

high threshold showing for such an assumed right."). It is well recognized that "[a] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera, 506 U.S. at 404, 113 S.Ct. at 853. In the instant case, there is no argument that Petitioner's claim is procedurally barred. Accordingly, the undersigned respectfully recommends that Petitioner's free standing claim of actual innocence be dismissed.

To the extent Petitioner is arguing that the trial court violated State law by failing to grant him a new trial based upon the "newly discovered evidence," Petitioner's claim is not cognizable in federal *habeas* corpus.  Estelle, 502 U.S. at 67 - 68, 112 S.Ct. at 475 (stating that "[i]t is not the province of a federal habeas corpus court to reexamine state court determinations on state-law questions."); McNeill v. Branker, 601 F.Supp.2d 694 (E.D.N.C. Feb. 17, 2009)(Any claim by petitioner that the state court erred in denying his motion for a new trial based upon newly discovered evidence was not cognizable on federal *habeas* review.) Furthermore, the State *habeas* Court considered Petitioner's above claim and concluded that the claim was without merit. (Document No. 23-1, Exhibit 9, pp. 33 - 35.) The State *habeas* Court determined that even though K.R.S. "had recanted on numerous occasions before trial," K.R.S. testified at trial that Petitioner sexually abused her and explained the reasons for her recantations. (Id., p. 33.) Although K.R.S. repeated her most recent recantation under oath during the omnibus hearing, the State *habeas* Court determined that "this evidence is cumulative as it is one more recantation to add to the litany of the same made before trial and brought out on cross-examination." (Id., p. 35.) Specifically, the State *habeas* Court found that "the latest recantations by K.R.S., in her letter and at the omnibus habeas hearing, do not constitute newly discovered evidence as they are reiterations of the same

recantations made before trial and brought out on cross-examination by trial counsel." (Id.) The State *habeas* Court further concluded that "[t]he evidence is not 'such as ought to produce an opposite result at a second trial on the merits.'" (Id.) Thus, the State *habeas* Court determined that K.R.S.'s testimony at trial concerning her prior recantations to be more credible than her recent recantation. The findings of the State *habeas* Court concerning the nature and credibility of the recantation are entitled to a presumption of correctness. See Jones, 808 F.Supp.2d at 919(The State *habeas* Court's factual findings are presumed to be correct, which "is especially true where state courts have 'resolved issues like witness credibility.") A review of the trial transcripts reveal that K.R.S. testified at trial that she recanted because she wanted to keep her family together and she did not want Petitioner to go to jail. (Document Nos. 23-3 and 23-4, Exhibit 18, pp. 263-91.) K.R.S. explained that her mother and Petitioner strongly encouraged her to recant and instructed her as to what to write in her letters to the Circuit Court Judge. (Id.) K.R.S. stated that on one occasion Petitioner provided her with a typed statement and instructed K.R.S. to re-write the recanting statement in her handwriting. (Id.) Although Petitioner disagrees with the State *habeas* Court's finding that K.R.S.'s recent recantation was not new evidence, but was cumulative of the testimony presented to the jury, Petitioner has failed to rebut the State Court's finding by clear and convicting evidence. Based on the foregoing, the undersigned respectfully recommends that Petitioner's above claim be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 23.), **DISMISS** Petitioner's Petition

Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 2), and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to counsel of record.

Date: August 4, 2015.

R. Clarke VanDervort
United States Magistrate Judge