IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston



FILED

SEP - 2 2015

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

Harold Lee Cyrus,

   Petitioner,

v.          Case No.1:12-09341

David Ballard, Warden,
Mt. Olive Correctional Complex,

   Respondent.

### PETITIONER'S OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

On August 4, 2015, the Honorable R. Clark VanDervort, U.S. Magistrate Judge, filed his Proposed Findings and Recommendation (hereinafter "PF & R") in the above captioned civil action. Pursuant to Title 28, U.S. Code § 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, petitioner respectfully submits these specific written objections to PF&R and asks this Court to review those portions of Magistrate VanDervort's Proposed Findings and Recommendation *de novo*.

On October 10, 2014, Respondent filed a Motion a Motion for Summary Judgment, (ECF 23). On December 15, 2014, Petitioner filed Reply to Respondent's Motion for Summary Judgment) (ECF No. 31) U.S. Magistrate Judge VanDervort recommends that the presiding U.S. District Judge: 1) Grant the Respondent's Motion to Summary Judgment (PF & R, p. 46); 2) Dismiss Petitioner's Petition Under 28 U.S.C. § 2254 for A Writ of Habeas Corpus By A Person in State Custody (Document 2) and remove his matter from the Court's docket (PF & R, p. 66). Petitioner specifically objects to these

-1-

recommendations and asks this Court to review *de novo* the portions of the report to which petitioner specifically objects.

1. Ineffective Assistance of Counsel, pp. 15 - 30

To prevail in a state post-conviction proceeding, "the petitioner has the burden of proving *by a preponderance of the evidence* the allegations contained in the petition which would warrant his release," Syl. Pt. 22*, State v. Thomas,* 157 W. Va. 640, 203 S. E. 2d 445 (1974).[1] To prevail on an ineffective assistance claim in this Court, petitioner must show that "the performance of his counsel fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," ***Strickland v. Washington***, 466 U.S. 668, 693, 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). ***Strickland***'s reasonable probability standard *is not a preponderance of evidence* standard. The ***Strickland*** standard does not require a showing that counsel's actions "more likely than not altered the outcome," *Strickland*, 466 U.S. at 693. Therefore, a finding by the State Court that counsel was not ineffective must be  scrutinized to determine if petitioner has satisfied the less demanding federal standard, and not blindly defer to a state court's determination.

A claim of ineffective assistance of counsel is a mixed question of law and fact, and when the ultimate issue is a mixed question of law, a federal court must reach an independent conclusion, ***Strickland***, 466 U.S. at 698. Therefore, this Court's review of the state court's decisions is *de novo*, *Savino v. Murray*, 82 F.3d 593, 598 (4th Cir.), cert. denied 117 S. Ct. 1, 135 L. Ed. 2d 1098 (1996)

---

[1] Syl. Pt. 1, *SER Scott v. Boles*, 150 W. Va. 453, 147 S.E. 2d 486 (1966)

A. Failure to Call Dr. Gregory H. Wallace as a Defense Witness, (PF&R pp. 16 - 19)

The U.S. Magistrate found "Petitioner has failed to provide any evidence rebutting the State habeas court's finding of fact and conclusions of law, which are presumptively correct, (PF&R, p. 17). Petitioner specifically objects to the finding and asks this Court to reject the finding of the Magistrate Judge and asks this Court to review this finding *de novo*, and  modify or revise this finding as the Court deems proper.[2]

The indictment returned by the Grand Jury alleged,

Count 18: the Grand Jury further charges that during 2002, the exact date to the Grand Jury unknown, in the County of Mercer, State of W. Va., HAROLD L. CYRUS committed the offense of "Sexual Assault - 3rd Degree" by unlawfully and feloniously engaging in sexual intercourse with K. S., while the said K.S. was less than sixteen years of age and at lease four years younger than the said Harold Lee Cyrus, who was sixteen years old or more and not married to K.S., against the peace and dignity of the State. *State v. Cyrus*, Indictment No. 05-F-307-F. (10-15–05)

Count 19: the Grand Jury further charges that during 2002, the exact date to the Grand Jury unknown, in the County of Mercer, State of W. Va., HAROLD L. CYRUS committed the offense of "Sexual Abuse by a Custodian" by unlawfully and feloniously engaging in sexual intercourse with K. S., a child under his care, custody and control, against the peace and dignity of the State. *State v. Cyrus*, Indictment No. 05-F-307-F. (10-15–05)

Count 20: the Grand Jury further charges that during 2002, the exact date to the Grand Jury unknown, in the County of Mercer, State of West Virginia, HAROLD L. CYRUS committed the offense of "Incest" by unlawfully and feloniously engaging in sexual intercourse with his stepdaughter, K. S., against the peace and dignity of the State. *State v. Cyrus*, Indictment No. 05-F-307-F. *State v. Cyrus*, Indictment No. 05-F-307-F. (10-15–05)

The U.S. Magistrate Judge made a finding that petitioner failed to provide any evidence rebutting the State Habeas Court's findings of fact and conclusions of law, which are presumptively correct (PF&R, p. 17). If trial counsel's decision not to call Dr. Wallace was a strategic decision, petitioner might be inclined to agree with Magistrate Judge

---

[2]28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

VanDervort. However, the decision to stipulate to Dr. Wallace's report, was not a reasoned strategic choice, but, rather the consequence of the Court's refusal to allow defense counsel to depose Dr. Wallace.

Whether a counsel's decision is a product of strategy is a question of fact for purposes of 28 U.S.C. § 2254(d)(2).

> A decision cannot be fairly characterized as "strategic" unless it is conscious choice between two legitimate and rational alternatives. It must be borne of deliberation and not happenstance, inattention, or neglect... Although we afford deference to counsel's strategic decisions, for this deference to apply there must be some evidence that the decision was just that: strategic. _Wood v. Allen_, 558 U.S. 290, 207-308, 130 S. Ct. 841, 852-853, 175 L. Ed. 2d 738 (2010)(Justice John Paul Stevens)

In his Motion for Summary Judgment, respondent failed to identify two legitimate and rational alternatives, one of which was to agree to the Prosecutor's stipulation that Dr. Wallace's Report be submitted to the jury. In the absence of a conscious choice between two reasonable courses of action, defense counsel's agreement cannot be deemed strategic, **_Wiggins v. Smith_**, 539 U.S. 510, 526, 123 S. Ct. 2527, 156 L. E. 2d 471.

Further, the purported rationale offered by Judge Derek Swope for Mr. Smith's abject failure to call Dr. Wallace as a witness is incongruent with his testimony, See, _SER Cyrus v. Ballard_, Mercer County C. A. No. 10-C-84, Omnibus Habeas Corpus, 01-06-11, Transcript, pp. 18 - 20. David Smith, trial counsel, asserted the Dr. Wallace was somewhere in Ohio "so getting a subpoena on him was mission impossible." And, secondarily, "he had no use for Dr. Wallace."

Dr. Wallace examined K. R. S. on January 29, 2002. He did not find evidence of sexual intercourse, an essential element of Incest. The jury was instructed that a mere

-4-

attempt to engage in sexual intercourse was sufficient to find a petitioner guilty of custodial child abuse, despite allegation in the indictment of an actual act of sexual intercourse, and the jury may have returned a guilty verdict predicated on a their finding of an attempted sexual intercourse or sexual intrusion which necessarily requires a lower standard of proof.

The U.S. Magistrate Judge deferred to a state court's factual finding that petitioner "was acquitted of all charges" regarding [K. R. S.] ... which allegedly occurred before Dr. Wallace examined her," (PF&F, pp. 17, 19, 30, 31, 33). The indictment alleged petitioner committed sexual assault, incest and child abuse in 2002. Dr. Wallace examined K. R.S. on January 29, 2002. If the jury found petitioner guilty of an act of incest and child abuse in January 2002, the state court's findings of fact are erroneous, and this court must give no weight to a factually inaccurate findings. Further, the state never established with any degree of certainty when K. R.S.'s hymen was no longer intact.

B. Failure to Consult or utilize an Expert on Child Sexual Abuse (PF& R pp. 19 - 21)

In 2004, Thomas M. Janutolo, Prosecuting Attorney, secured a order from Judge John R. Frazier that terminated the parental rights of petitioner and his wife, *State of W. Va., In The Interest of Kimberly S*., Mercer County, Case No. 03-JA-75-F. Mr. Janutolo and Deborah K. Garton's express intent was to dissolve K. R. S.'s only nuclear family. In the family court proceedings, K. R.S. denied any acts of sexual assault, incest or child abuse by petitioner. Question: "Did Harold Cyrus do anything to you sexually? K R S: "No Sir." (12-10-03, "Adjudication Hearing," pp. 74 - 91, e.g. pp. 77-78, pp. 82-83).

On December 2, 2003, five months after K. R.S. was removed from petitioner's home, Sherry Hedge, M.S., Supervised Psychologist, and Samantha Mann, M.A., Licensed Psychologist, evaluated K. R.S. Although K. R.S. had accused petitioner of sexual Abuse

-5-

in August 2003, she recanted her allegations in November, 2003. During the psychological evaluation she again denied petitioner abused her. In their diagnostic impressions, Ms. Hedge and Ms. Mann ruled out sexual abuse of a child. According the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, (DSM-IV-TR) "if the individual being evaluated is the victim of abuse code 995.53 for abuse. Shannon Beck, a social worker testified as a state witness, *State v. Cyrus*, 05-F-307-F, Trial Transcript, 04-11-06, pp. 296-326). While Ms. Beck explicitly referred to the Hedge-Mann Report, the jurors were not permitted to examine the report, perhaps because K.R.S. acknowledged being sexually active.

Defense counsel designated the Cornerstone Psychological Report (Hedge-Mann Report) as Defendant's Exhibit 6, but he failed to subpoena Ms. Hedge or Ms. Mann to inquire as to why they ruled out sexual abuse. Pursuant to Rule 7(a), Rules Governing § 2254 Cases in the U.S. District Courts, petitioner would ask this Court to expand the record to include the Cornerstone Psychological Report as evidence of counsel's failure to adequately prepare for trial or offer a complete defense to the charges.

Ms. Garton indicted Vickie Cyrus, K.R.S.'s biological mother, and petitioner for twenty-three (23) felonies. Mrs. Cyrus agreed to pled guilty to a felony. The State *nolle prosequied* twenty-one related charges, and she served eighteen (18) months in state custody including a commitment to Lakin Correctional Facility for Women. K R S was sixteen (16) years old, she was compelled to testify as a state witness in the criminal trial.

On Tuesday, April 12, 2006, during the direct examination by Deborah K. Garton, Assistant Prosecuting Attorney, K. R. S. testified she became petitioner's helper when she was twelve, Trial Transcript, p. 235, which would place the subsequent sexual contact sometime after January 12, 2002. When asked "how would you have sex in his truck?" K

R. S. responded, "He would lay me down in front and then, you know, he would just ... lay on top of me and then have sex with me." Trial transcript, p. 235. She testified that petitioner had sex with her when she was (13) thirteen, i.e., after January 12, 2003, and outside the scope of Counts 19 and 20 of the indictment, Trial Transcript, p. 239. The jury acquitted petitioner of Count 18, alleging a Sexual Assault in the 3rd Degree in 2002.

The State habeas court made three factual findings:

1. Shirley Alycoth, a family nurse practitioner examined K R S in August 2003.

2. Ms. Aycoth testified that she did not find any physical injuries or any physical findings. (T. Tr.,p. 381);)

3. Ms. Aycoth testified that KRS's hymen was not intact. (T. Tr., pp. 383-384)*(SER Cyrus v. Ballard*, Mercer County, C.A. No. 08-C-322-DS, "Order Denying the Petitioner's Petition for a Writ of Habeas Corpus and Removing It From the Docket, 02-19-09, pp. 31.

On cross-examination by defense counsel, Ms. Aycoth testified that K.R.S.'s hymen was not intact.(Tr. Transcript, 04/12/06, p. 382), a fact not established by the State during their direct examination. Judge Swope overlooked Ms. Alycoth's testimony that when a female has already begun having menstrual cycles, if they're physically active, if they ride bikes, they take gym classes, it's not unusual for them to not have an intact hymen (Tr. Transcript, 04/12/06, p. 382). K.R.S. had begun having menstrual cycles, although the jury was never informed of this fact.[3]

Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or the introduction of expert evidence," *Harrington v. Richter*, 562 U.S. ____, 131 S. Ct. 770, 778, 178 L. Ed. 2d 624, 643 (2011). This one of those cases. The information that K.R.S.' hymen was not intact is not necessarily an

---

[3] See Emergency Room Note, Dr. Zaki Elsarrag, M.D., 08-20-03 (attached)

indication that his accuser had a sexual encounter with petitioner.

This an  alternative reason for  K.R.S.'s hymen not being intact which was not disclosed to the jury. Chris T. Smith, an 19 year old had a non-consensual sexual relationship with K. R.S. in June, 2003. Mr. Smith was prosecuted in Bland County, Va., for contributing to the delinquency of a minor in contravention of <u>Va. Code</u> § 18.2-371(I).[4] K.R.S. was examined by a SANE nurse at Bluefield Regional Medical Center shortly after Mr. Smith's arrest.[5] Judge Frazier, the trial judge,  sealed those hospital records and the Bluefield Regional  Medical Center  will not release K.R.S.'s patient's records without a court order.       Rule 6(a) of the Rules Governing § 2254 Cases entitles litigants "to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." ***Bracy v. Gramley***, 117 S. Ct. 1793, 1796-97 (1997). Petitioner submits an examination of judicially sealed medical records of K. R.S. maintained at the Bluefield Medical Center would help this Court  make a reliable determination with regard two major claims for relief:  ineffective assistance of counsel and the insufficiency of evidence. ***Harris v. Nelson***, 394 U.S. 286, 299-300 (1969).Pursuant to Rule 7(a), Rules Governing § 2254 Cases in the U.S. District Courts, petitioner prays this Court expand the record to include the treatment afforded  K. R.S. at Bluefield Medical Center in 2003 as

---

[4] Any person 18 years of age or older, ..., who (i) willfully contributes to ... any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abuse or neglected...shall be guilty of a Class I misdemeanor. <u>Va. Code</u> § 18.2-371. See Incident Report, 2003-450, 06- 21-25, 2003; Warrant of Arrest, Case No. 520-01-00, August 4, 2003 (*infra*.)

[5] (See Emergency Room Note prepared by Dr. Zaki Elsarrag, .M.D.; "As per my discussion with the SANE Nurse, this same patient was here about one month ago, where she had presumably engaged in consensual sexual activity with adult men and she was ... treated and released again.... protocol....")

evidence of counsel's failure to adequately prepare for trial or offer a complete defense.

The U.S. Magistrate Judge, "without determining whether trial counsel's performance was deficient," found "petitioner has not demonstrated that he was prejudiced by counsel's failure to call an expert witness," (PF&R, pp. 20, 21). Petitioner objects to this finding and asks this Court to reject this finding and. further, prays this Court to conduct a *de novo* review of the finding, and revise the finding as the Court deems proper.[6]

C. Appellate Counsel, (PF&R, pp. 21 - 23)

A document filed pro se is to be liberally construed," ***Erickson v. Paulson***, 561 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2002). "All pleadings shall be so construed as to do substantial justice." Federal Rules of Civil Procedure, Rule 8(f). An amendment of a petition should be freely granted if justice so requires. Fed. R. Civ. P. 15(a).

Phillip A. Scantlebury prepared and filed a petition for direct appeal. He presented only two issues: 1) The Trial Court erred in not requiring the State to Comply with the disclosure requirements imposed by Rule 16, W,. Va. Rules of Criminal Procedure, and 2) The Trial Court erred in not holding pre-trial hearings on other crimes, wrongs or acts for which the Petitioner was not indicted in violation of Rule 404 of the W. Va. Rules Evidence. Mr. Scantlebury also served as trial counsel so there was no objective evaluation of the pre-trial, trial or post-trial conduct of Mr. Scantlebury and David. C. Smith. Together, they failed to identify any palpable violation of the appellant's constitutional rights.

The indictment returned by the Grand Jury alleged three crimes in 2003,

Count 21: the Grand Jury further charges that between January 2003, and August

---

[6] 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

18, 2003, in the County of Mercer, State of W. Va., HAROLD L. CYRUS committed the offense of "Sexual Assault - 3rd Degree" by unlawfully and feloniously engaging in sexual intercourse with K. S., while the said K.S. was less than sixteen years of age and at lease four years younger than the said Harold Lee Cyrus, who was sixteen years old or more and not married to K.S., against the peace and dignity of the State. *State v. Cyrus*, Indictment No. 05-F-307-F. (10-15-05)

Count 22: the Grand Jury further charges that further charges that between January 2003, and August 18, 2003, in the County of Mercer, State of W. Va., HAROLD L. CYRUS committed the offense of "Sexual Abuse by a Custodian" by unlawfully and feloniously engaging in sexual intercourse with K. S., a child under his care, custody and control, against the peace and dignity of the State. *State v. Cyrus*, Indictment No. 05-F-307-F. (10-15–05)

Count 23: the Grand Jury further charges that further charges that between January 2003, and August 18, 2003, in the County of Mercer, State of West Virginia, HAROLD L. CYRUS committed the offense of "Incest" by unlawfully and feloniously engaging in sexual intercourse with his stepdaughter, K. S., against the peace and dignity of the State. *State v. Cyrus*, Indictment No. 05-F-307-F. *State v. Cyrus*, Indictment No. 05-F-307-F. (10-15–05)

On April 12, 2006, petitioner was acquitted of an act of sexual intercourse in 2002 (Count 18) and convicted of an act of sexual intercourse in 2002 (Counts 19 and 20). On April 12, 2006, petitioner was acquitted of an act of sexual intercourse in 2003 (Count 21)  and convicted of an act of sexual intercourse in 2003 (Counts 22, 23).

A "legally inconsistent verdict" is "

a verdict in which the same element is found to exist and not to exist, as when a defendant is acquitted on one offense and convicted of another, even though the offenses arise from the same set of facts and an element of the second offense requires proof that the first offense has been committed. Black's Law Dictionary, 8th Ed.,  p, 1392.

West Virginia has enacted "a series of sexual offense statutes punishing the same act of sexual aggression (multiple) statutes that provide cumulative punishment for that same act," *State v. Ray*, 221 W. Va. 364, 655 S. E. 2d 110, 118 (2007) (Justices Albright and Starcher dissenting) In this case, three crimes share a common element: a singular and continuous act of sexual Intercourse. A judge may rationally infer that because

petitioner was twice acquitted of sexual assault, the jurors implicitly found the state failed to prove beyond a reasonable doubt that petitioner engaged in sexual intercourse with K. R.S. in 2002 and 2003. As there was insufficient evidence to support a conviction for sexual assault, there must also be insufficient evidence to sustain a conviction for incest or child abuse arising from two singular continuous incidents In a dissenting opinion, Justices Joseph Albright and Larry Starcher, suggested "that West Virginia's ... scheme with respect to multiple punishments for the same physical act deserves careful review to assure that the result is both reasonable and appropriate." *Ray*, 655 S. E. 2d at 118.

Inconsistent or repugnant verdicts provide no basis for relief only **if** the conviction is supported by sufficient evidence, ***Dunn v. U.S.***, 284 U.S. 390, 399, 52 S. Ct. 189, 76 L. Ed. 356 (1932); ***U.S. v. Powell***, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *U.S. v. Thomas*, 900 F. 2d 37 (4th Cir., 1990), However, a legally inconsistent or repugnant verdict requires a reasonably competent attorney to investigate and raise an insufficiency of evidence claim in any appellate proceeding. Sufficiency of the evidence is thus an element of a challenge to inconsistent or repugnant verdicts, and is a recognized due process requirement, *Sullivan v. Cuyler*, 723 F. 3d 1077, 1083-84 (3rd Cir., 1983).

The U.S. Magistrate Judge found petitioner's "claim of ineffective assistance of appellate counsel is improperly pled," (PF&R, p. 22-23). Petitioner objects to the finding and asks this Court to reject the Magistrate Judge's finding and asks this Court to review this finding *de novo*, and modify or revise this finding as the Court deems proper.[7]

D. Improper Conviction for Incest, (PF&F, pp. 23 - 25)

---

[7]28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

The Indictment returned by the Grand Jury charged petitioner with committing "Incest" by engaging in sexual intercourse with his stepdaughter, K. S. in 2002 (Count 20) and 2003 (Count 23). When the incest statute W. Va. Code § 61-8-12 is read in conjunction with the statute prohibiting marriage of persons within certain degrees, WV Code § 48-2-302(c) (2001, c. 91), it is clear that the state legislature's intent was to prohibit actual carnal knowledge and not lesser degrees of sexual contact or sexual intrusion. Justices Albright and Starcher concur:

> Given that the prohibition against incest was focused historically on the relationship aspect rather than the sexual act and was impelled by inbreeding and succession-related concerns, it is high time for our Legislature to re-examine, our incest laws for purpose of rewriting those laws to more accurately reflect the societal concerns at issue today: proscribing sexual conduct. *State v. Ray*, 665 S. E. 2d at 119

Petitioner was convicted of violating W. Va. Code § 61-8-12 (1994, 1st Ex. Session, c. 23), Incest (Count 20), and,  W. Va. Code  § 61-8D-5(a)( 1998, c. 117) (Child Abuse)(Count 19) sometime in 2002. However, petitioner was acquitted of Count 18, alleging a violation of  W. Va. Code § 61-8B-5(b) (Sexual Assault - 3rd Degree) (2000, c. 85) sometime in 2002. It is legally and factually impossible to be convicted of Incest or Child Abuse predicated on a simultaneous act of sexual intercourse without also being guilty of Sexual Assault in 3rd Degree predicated on the same act of sexual intercourse.

Petitioner was convicted of violating W. Va. Code § 61-8-12 (1994), Incest (Count 23) , and. W. Va. Code  § 61-8D-5(a)( 1998) (Child Abuse)(Count 23) before Aug. 13, 2003. Petitioner was acquitted of Count 21 alleging a  violation of  W. Va. Code § 61-8B-5(b) (Sexual Assault - 3rd Degree) (2000, c. 85) before August 13, 2003. It is impossible to be convicted of Incest or Child Abuse predicated on a simultaneous act of sexual

intercourse without first being guilty of Sexual Assault in 3rd Degree.

Incest is a statutory crime. It  was not a common law crime. Therefore, whatever elements are necessary to constitute the offense of incest are prescribed wholly by WV Code  § 61-8-12. *U. S. ex. Rel. Preece v. Coiner*, 150 F. Supp. 511, 512 (N.D. W. Va., 1957) Therefore, the law must be strictly construed in favor of the defendant.

The indictment charged petitioner violated his daughter or step-daughter by engaging in sexual intercourse, i.e. incest,  between 1997 and 2003. The jury convicted petitioner of two (2) incest charges. The jury acquitted petitioner him of five (5) incest charges. The judge dismissed two incest charges (PF&R, p. 2). Does the State's case-in-chief rest on reasonable  proof of each discrete count as a distinguishable, identifiable offense, rather than on a theory that the defendant had engaged in a pattern of unlawful conduct over eight years?  Five acquittals, two dismissals, and the fact that the jury also acquitted petitioner of conterminous alleged sexual assault involving K. R. S. might persuade a rational  jurist that the State's evidence was deficient. The identity of  father and daughter was known, but the when (actual date of sexual intercourse), and the where (place of sexual intercourse), and the how (was there verifiable act of  sexual intercourse, excluding any other individual) are ambiguous. The U. S. Magistrate Judge found "trial counsel was not ineffective concerning Petitioner's incest conviction." Petitioner objects to the finding and asks this Court to reject  Magistrate Judge's finding and prays this Court will review his finding *de novo*, and  modify  the finding as the Court deems proper.[8]

E. Consecutive Sentences for Incest, 25 - 28

---

[8] 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

The Fifth Amendment provides, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" In 1969, the Supreme Court stated that the guarantee against double jeopardy consists of three separate constitutional protections: first, it protects against a second prosecution for the same offense after acquittal; second, it protects against a second prosecution for the same offense after conviction; and third, it protects against multiple punishments for the same offense, ***N.C. v. Pearce***, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 65 (1969). This case involves a multiple-punishments issue. A double-jeopardy violation arise  when the same criminal act is punished under three distinct statutory provisions.

The first step "in determining the troublesome question of what constitutes the 'same offense'" is to apply the two different tests, ***Blockburger v. U.S.*** 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. ED. 306 (1932) .  The first ***Blockburger*** test asks whether each criminal act is a separate and distinct one, separated by time. 284 U.S. at 301-02. If the offense is a single continuous act, with a single impulse, in which several different statutory provisions are necessarily violated along that continuum, the offenses merge together. This is variously called "the merger doctrine," or "the single impulse doctrine," 384 U.S. 302-93; *Hagood v. U.S.*, 93 A. 3d 210, 226 (D.C. 2014) If more than one statutory offense is necessarily committed by that single criminal act and impulse, then the offenses merge and the defendant may be punished only once. This "single impulse" aspect of ***Blockburger*** is U. S.Supreme Court law. As a U.S. District Court, this Court is  bound by Supreme Court reasoning on federal constitutional issues.

In ***Blockburger***, a druggist was convicted of three counts of selling morphine

-14-

improperly to the same buyer. He made one sale on Monday and another sale on Tuesday. The morphine was improperly sold on both days because it was not in its original tax-stamped package, and the morphine sale on Tuesday was also not made pursuant to a written order of the purchaser. The druggist argued that the morphine sales to the same person on two days constituted a single offense and that the Tuesday sale, which violated two separate statutes—improper packaging and without a written order—was just one act; it was one sale and therefore could be punished only once. The druggist wanted his three convictions reduced to one. The Supreme Court upheld all three convictions.

The first ***Blockburger*** test was whether the two separate morphine sales on two separate occasions to the same customer were two offenses or one. The Court stated that the distinction between the two separate sales in this case "and an offense continuous in its character is well settled," noting that "'when the impulse is single, but one indictment lies, no matter how long the action may continue.'" The Court explained, "In the present case, the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain." This was unlike "continuous crimes," which are necessarily committed over a period of time and may involve separate acts that are incidental to, or "part and parcel" of, the single completed offense.

The ***Blockburger*** decisions addresses two multiple-punishment issues: the "continuous action vs. separate and distinct acts" issue and the "one act violates separate distinct statutes" issue. Sometimes two offenses that are the "same" may both be punished; sometimes two "different" offenses may not both be punished. It all depends on

the legislature's intent.

Petitioner submits a double-jeopardy violation occurred when he was convicted and punished for two offenses that are the same both in law and in fact. In this case, a conviction for incest requires a completed act of sexual intercourse. A single sexual act of penile penetration almost always requires sexual contact or sexual intrusion, the alleged basis for child abuse  by a custodian. One continuing act, the result of a single impulse, may violate three separate laws, but there may be only one conviction for that one completed act of incest. Therefore, multiple and consecutive convictions for one complete, ultimate act of incest violates the Double Jeopardy Clause.

Some jurisdictions require merger by statute and provide broader protection than the Double Jeopardy Clause. Whatever the source or scope of the rule, it has one root purpose: to prevent Double Jeopardy Clause violations. The merger rule prevents "cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed." The merger rule can be stated another way: Where two crimes are such that the one cannot be committed without necessarily committing the other, then they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both. In this case, the same sexual act was alleged in the indictment for both the incest and the child abuse, i.e., sexual intercourse. in many jurisdictions, a defendant may not be convicted for a completed sexual assault by penetration and also for conduct that is inextricable part of that single sexual assault.

A conviction for incest required a verifiable act of sexual intercourse. A conviction for child abuse also required a verifiable act of sexual intercourse. Under the *Blockburger*

-16-

continuous transaction test, there can be only one conviction and one sentence.

The U.S. Magistrate Judge found "that there was no double jeopardy violation and the trial court appropriately sentenced Petitioner to consecutive sentences ...," (PF&R, p. 28). For the reasons set forth above, petitioner specifically objects to the finding and asks this Court to reject the finding of the Magistrate Judge and asks this Court to review this finding *de novo*, and  modify or revise this finding as the Court deems proper.[9]

While state law authorizes the imposition of cumulative sentences, W. Va. Code § 61-11-21 (Code 1923, c. 152), the Legislature also authorized the sentencing authority to impose concurrent sentences whenever there are facts or circumstances demand he exercise his informed discretion. The Court failed to exercise his informed discretion despite four (4)  obvious facts.  First, in this case, the jury returned a legally inconsistent verdicts. On April 12, 2006, petitioner was acquitted of an act of sexual intercourse in 2002 (Count 18) and convicted of an act of sexual intercourse in 2002 (Counts 19 and 20). On April 12, 2006, petitioner was acquitted of an act of sexual intercourse in 2003 (Count 21) and convicted of an act of sexual intercourse in 2003 (Counts 22, 23). Such repugnant verdicts warrant a re-examination of the evidence adduced by the State and meaningful consideration of concurrent sentences rather than  consecutive sentences.

Second, K.R.S. recanted her allegations in November 2003, a mere three months after she made them. And, subsequently she recanted her allegations at the juvenile adjudication hearing prior to petitioner's trial. And, she re-asserted her recantation of her trial testimony during the state habeas proceedings.

---

[9]28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

Third, the jury acquitted petitioner of three charges alleging improper sexual conduct with his daughter V.C., in 1997 (Counts 3-5). The jury acquitted petitioner of three allegations of improper sexual contact with his stepdaughter, K.S., in 2000 (Counts 12-14). And the jury acquitted petitioner of three allegations of improper sexual contact with his stepdaughter in 2001 (Counts 15-17)

Four, petitioner's wife and co-defendant served no more then eighteen (18) months and was allowed to pled guilty to only two charges brought against her. Petitioner's jury acquitted petitioner a charge to which Vickie Cyrus pled guilty. Under state law, when co-defendants are similarly situated, some courts will reverse on disparity of sentence alone, Syl. pt. 2, *State v. Buck*, 173 W. Va 243, 314 S. E. 2d 406 (1984); syl. pt. 3, *State v. Robey*, 233 W. Va. 1, 754 S. E. 2d 577 (2014)

F. Unanimity of the Jury Verdict, 28-29

"Without determining whether trial counsel's performance was deficient," the U.S. Magistrate Judge found, "found the petitioner has not demonstrated that he was prejudiced by counsel's failure to challenge the unanimity of the jury verdict," (PF&R, p. 29). Petitioner specifically objects to the finding and asks this Court to reject the finding of the Magistrate Judge and asks this Court to review this finding *de novo*, and modify or revise this finding as the Court deems proper.[10] According the Magistrate Judge and the state habeas court, petitioner was not convicted of a crime in prior to January, 29 2002, when Dr. Wallace examined K. R.S. and found no evidence of sexual abuse. However, the U.S. Magistrate Judge and state courts found petitioner may lawfully be convicted of two crimes in 2003

---

[10]28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

without considering Chris T. Smith's non-consensual sexual relationship with K.R.S. in June, 2003, as the more probable source of the hymen of K. R. S. not being intact.

2. Exculpatory Evidence, ( PF&R, pp. 29 - 35)

The U.S. Magistrate Judge deferred to a state court's factual finding that petitioner "was acquitted of all charges" regarding [K. R. S.] ... which allegedly occurred before Dr. Wallace examined her," (PF&F, pp. 30, 31, 33). The indictment alleged petitioner committed sexual assault, incest and child abuse in 2002. Dr. Wallace examined K. R.S. on January 29, 2002. If the jury found petitioner guilty of an act of incest and child abuse in January 2002, the state court's findings of fact are erroneous, and this court must give no weight to a factually inaccurate findings. Further, the state nor the jury never established with any degree of certainty when K. R.S.'s hymen was no longer intact. The U.S. Magistrate judge found "no indication in the record that Petitioner was 'prevented by the delay from using the (Dr. Wallace's Report) effectively preparing and presenting the defendant's case."

The Magistrate Judge made no finding or recommendation addressing petitioner's contention that petitioner was denied an impartial jury trial when he as indicted and prosecuted for nine (9) crimes:

Sexual Assault in the 1st Degree, WV Code § 61-8B-3: (Count 3, 1997), (Count 12, 2000) and (Count 15 2001)

Sexual Abuse/Custodian, W. Va. Code § 61-8D-4 (Count 4, 1997), (Count 13, 2000), and Count 16, 2001)

Incest, WV Code § 61-8-12 (Count 5, 1996), (Count 14, 2000) (Count 17, 2001)

These nine (9) felonies were allegedly committed prior to December 31, 2001. (Doc. # 31, pp. 23-27). The failure of the Magistrate Judge to make a finding on this critical fact

precludes granting Respondent the summary judgment he seek. A material fact is still in dispute.  Petitioner specifically objects to the finding and asks this Court to reject the finding of the Magistrate Judge and asks this Court to review this finding *de novo*, and modify or revise this finding as the Court deems proper.[11]  While petitioner was ultimately acquitted of these nine charges, their inclusion raises the prospect the petitioner was convicted the basis of a pattern of alleged conduct rather than a specific offense on a specific date in a specific manner within the jurisdiction of the criminal court.

3. Prosecutorial Misconduct, (PF&R, pp. 34 - 37)

"Prosecutors have a special duty is to seek justice, not merely to convict," ***Connick v. Thompson***, 131 S. Ct. 1350,1362, 179 L. E. 2d 417 (2011); ***Young v. ex rel. Vuitton et Fils S.A.***, 481 U.S. 787, 803, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987)[12]

In Texas, Alvaro Alcorta was accused of murdering his wife, Herlinda. Mr. Alcorta claimed that he did so in fit of sudden passion aroused when he discovered his wife, already suspected of infidelity, kissing Natividad Castilleja late at night in a parked car. The prosecutor, knowing of the illicit intercourse between Mr. Castilleja and Mrs. Alcorta, told him not to volunteer that he had a sexual relationship with the Herlinda. Castilleja testified he was not sexually involved with Mrs. Alcorta. Mr. Castilleja's testimony gave the jury the false impression that his relationship with Herlinda was only a casual  friendship.

The Supreme Court held that the state cannot allow a witness to give a material

---

[11] 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

[12] Cassidy, "Character and Context: What Virtue Theory Can Teach Us About A Prosecutor's Ethical Duty to 'Seek Justice'", 82 Notre Dame Law Review 635, Dec. 2006.

false impression of the evidence, i.e., "the state violates a criminal defendant's right to due process of law when, although not soliciting false evidence, it allows false evidence to go uncorrected when it appears." *Alcorta v. Texas*, 355 U.S. 28, 31-32, 78 S. Ct. 103, 105, 2 L. Ed. 2d 9 (1957); *Hayes v. Brown*, 399 F. 3d 972 (9th Cir., 2004) Therefore, the ruling of the state courts is contrary to clearly established federal constitutional law. *Smallwood v. Warden, Md. Penitentiary*, 205 F. Supp. 325 (D. Md. 1962).

As in the present case, some time after Alcorta's conviction, Castilleja issued a sworn statement in which he declared that he had given false testimony at the trial. He admitted the he had been Mrs. Alcorta's lover and had sexual relations with her on many occasions.... 355 U.S. at 30, 78 S. Ct. At 105.

The U.S. Magistrate found "no evidence that the State Habeas Court's determination was contrary to a reasonable application of federal law, or based on an unreasonable determination of facts," PF&R, p. 36; And, "although the record contains evidence that K. R .S. made inconsistent statements concerning abuse by Petitioner," the Magistrate Judge found "that there is not evidence that the prosecutor presented false or perjured testimony." (PF&R, p. 36). Petitioner specifically objects to the finding. And, asks this Court to re-examine the Petition (Dkt. No. 2, pp. 10-11) and Petitioner's response to the Motion for Summary Judgment (Dkt. 31, pp. 27-28) and petitioner asks this Court to reject the finding of the Magistrate Judge and asks this Court to review this finding *de novo*, and  modify or revise this finding as the Court deems proper.[13] The Supreme Court has consistently condemned any impermissible state involvement in the use of untruthful

_____

[13] 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

testimony. *__Miller v. Pate__*, 386 U.S. 1, 17 L. ED. 2d 690, 87 S. Ct. 785 (1967). In 1959, the Supreme Court reiterated that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction," *__Napue v. Illinois__*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217. 79 S. Ct. 1173 (1959)

4. Insufficient Evidence, (PF&R, pp. 37 - 41)

The indictment returned by the grand jury omits the phrase "or attempts to engage in sexual exploitation of, or in sexual intrusion or sexual contact" and narrowed the scope of the child abuse charges  to only on method of committing the crime, i.e, "engaging in sexual intercourse".[14] In the absence of a verifiable instance of actual sexual intercourse in 2002 directly attributable to petitioner, and the absence of a verifiable instance of actual sexual intercourse in 2003 attributable directly to petitioner and conclusively excluding Christopher T. Smith, there is insufficient evidence to sustain two convictions for child abuse, *__Parker v. Matthews__*, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32; *__Jackson v. Va.__*, 443 U.S. 307, 319, 99 Sup. Ct. 2781, 61 L. Ed. 2d 560 (1979); *__Coleman v. Johnson__*, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012).

The State Courts and the U.S. Magistrate Judge apparently believe the jury considered  six (6)  discrete, distinguishable, identifiable offenses, while petitioner and K.R.S. maintain petitioner is innocent. During their deliberations, the jury initially concluded petitioner did not commit two (2) sexual assaults, and the jury found petitioner guilty of two incest charges and two sexual abuse by a custodian charges.

---

[14] W. Va. Code § 61-8D-5(a)(1998, c.117) did state "if any ... custodian of a child ... shall engage in or attempts to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his care, custody or control". (PF & R, pp. 27, 39)

The U.S. Magistrate Judge implicitly acknowledged that when these crimes occurred was indefinite, i.e., "sometime in 2000" and "between January and August 18, 2003." But, the question of whether the act of sexual intercourse supporting the incest conviction, the act of sexual intercourse supporting the child abuse conviction, and act of sexual intercourse giving rise to the sexual assault charge occurred simultaneously or were separate in time and space is not determinable based on the evidence that was presented to the jury. When the evidence on such a critical element of all three crimes is in equipose, the state has not proven its case beyond a reasonable doubt.

In **_Blockburger_**, the Court stated that the distinction between separate sales "and an offense continuous in its character is well settled," noting that "'when the impulse is single, but one indictment lies, no matter how long the action may continue,'" 284 U.S. at 302-03; **_In Re Snow_**, 120 U.S. 274, 286, 20 L. Ed. 658. 7 S. Ct. 556 (1887) Petitioner submits the jury's verdict supports a finding that petitioner's criminal conduct is continuous in its character and the state's proof might establish there was one original impulse which was manifested by a discrete act of sexual intercourse in 2002 which the jury determined violated two laws, and one original impulse which was manifested by a discrete act of sexual intercourse in 2003, which the jury determined violated two laws. The State did not prove and the jury did not find a fresh impulse that separates the sexual assault from the incest, or a fresh impulse that separates the incest from the child abuse.

Petitioner maintains the jury's verdict of not guilty on the sexual assault charge, warrants a finding of not guilty on each related offenses because the state failed to establish a sequential separation between three discrete violations of the law in either 2002

or 2003. Further if the jury returned a guilty verdict on the incest charge (Count 20) before the considered the Sexual Abuse  (Count19), then petitioner may not be convicted of Count 19 without violating the second protection afforded by the double jeopardy clause., i.e. a second prosecution for the same offense after conviction, or *visa versa*. And, if the jury returned a guilty verdict on the incest charge (Count 23) before the considered the Sexual Abuse  (Count 22), then petitioner may not be convicted of Count 22 without violating the second protection afforded by the double jeopardy clause., i.e. a second prosecution for the same offense after conviction, or visa versa.

5. Actual Innocence Upon Recantation of Testimony, pp. 41 - 45

   Petitioner's marriage to Vickie Stevenson was dissolved on September 26, 2013. Five years earlier, on November 24, 2008, Deborah Garton cross-examined  K. R. S., an eighteen years old adult, in an omnibus habeas corpus proceeding:

> Ms. Garton:   Okay, so this incident that led to Mr. Cyrus's
>               incarceration did not happen?
> K.R.S:        No, it did not.
>
> K.R.S.:       So you asking me if I lied in that trial when I was under oath?
> Ms. Garton:   Yes.
> K.R.S.        Yes.
>
> Ms. Garton:   You're admitting to a crime?
> K.R.S.        I guess that a crime. (*SER Cyrus v. Ballard*, Mercer County, 08-C-
>               322-DS, Omnibus Habeas Corpus Proceeding, Transcript, 11-24-08,
>               pp. 23, 26.

   The Honorable Derek C. Swope, state habeas judge, the Supreme Court of Appeals, and U.S. Magistrate Judge Vandervort are wilfully blind to the explicit recantation of the crucial state witness. Today, K. R. S. is twenty-five (25) years old, married and the mother of five children: Ephraim E. S., Colton R. S., Ayden S., Matthew R. S., and Austin

-24-

Lee S. She continues to want petitioner to be meaningful part of her life. And, the judicial indifference to her explicit recantations of her trial testimony frustrates the healing process.

Therefore, Petitioner specifically objects to the finding and asks this Court to reject the finding of the Magistrate Judge and petitioner asks this Court to review this finding *de novo*, and  modify or revise this finding as the Court deems proper.[15]

## CONCLUSION

The U.S. Magistrate Judge has  proposed that this Honorable Court confirm and accept his finding and recommends that the District Court grant Respondent's Motion for Summary Judgment (Document # 130) and dismiss Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody (Document No. 2), and remove this matter from the Court Docket. Petitioner formally objects to these findings and recommendation and petitioner asks this Court vacate, amend or modify the Magistrate Judge's Proposed Findings and  Recommendation to allow further development of necessary facts.

Respectfully submitted,

*Harold Lee Cyrus*

Harold Lee Cyrus

CERTIFICATE OF SERVICE

I, Harold L. Cyrus,  petitioner *pro se*, does hereby certify that on August 31 , 2015, I deposited a true and complete copy of the foregoing PETITIONER'S OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE in the

---

[15] 28 U.S.C. § 636(b)(1); Federal Rules of Civil Procedure, Rule 72(b)(3); *Brock v. Heckler*, 615 F. Supp. 1348 (S.C., 1985).

institutional mailbox, for transmission by the U. S. Mail, postage prepaid, in an envelope addressed as follows: Shannon F. Kisner, Assistant Attorney General, 812 Quarrier Street, 6th Floor, Charleston, W. Va. 25305. A separate and complete copy was send to the Honorable David Faber, U.S. District Court, P O. Box 2546, Charleston, West Virginia 25329, and the Honorable R. Clarke VanDervort.

Harold L. Cyrus, DOC #    43634

*Harold L. Cyrus*

O.I.D. # 3401438
Mt. Olive Correctional Facility
One Mountainside Way
Mt. Olive, West Virginia 25185

Oak Hall - 125
Mount Olive Correctional Complex
One Mountainside Way
Mount Olive, West Virginia 25185

September 1, 2015

Ms. Teresa L. Deppner
Clerk of the District Court
U.S. Courthouse - Room 2303
601 Federal Street,
Bluefield, West Virginia 24701

Re:   *Cyrus v. Ballard*, No. 1:12-cv-09341 (DAF-RCV)

Dear Ms Deppner::

Today, I am submitting for filing my Petitioner's Objections to the Proposed Findings and Recommendations of the U.S. Magistrate Judge.. A true and complete copy of this document has been mailed to the Honorable David A. Faber, the Honorable R. Clarke VanDervort, and  Mr. Shannon F. Kiser, Esquire,  under separate covers. Please submit this document to the Court at the appropriate time. Upon receipt and filing, please mail me a copy of the docket sheet in this civil action. Thank you for your kind consideration of this matter. I cordially anticipate hearing from you in the near future

Sincerely yours,

*Harold L. Cyrus*

Harold L. Cyrus
O.I.D. 3401438
DOC # 43634

Enclosire

cc:   D. A, Faber
      R. C. VanDervort
      S. F. Kiser

$02.08
AUG 31 201
MAILED FROM ZIP CODE 2516
UNITED STATES POSTAGE
02 1M
000 4271869

Ms. Teresa L Deppner
Clerk of the court
601 Federal Street
Bluefield, West Virginia 24701

AROLD L. Cyrus
01438 DOC 43634
NE CORRECTIONAL COMPLEX
OUNTAINSIDE WAY
IVE, WEST VIRGINIA 25185

CORRESPONDENCE FROM
AN INMATE AT MOUNT OLIVE
CORRECTIONAL COMPLEX

AUG 31 2015